902 P.2d 971

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Anil J. CALEB, Defendant–Appellant.**

No. 18070.

Supreme Court of Hawai'i.

Sept. 8, 1995.

Rory Soares Toomey, on the briefs, Honolulu, for defendant-appellant.

Russell Blair, II, Deputy Prosecuting Atty., on the briefs, Honolulu, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA Justice.

Defendant-appellant Anil J. Caleb appeals his conviction for Driving Under the Influence of Intoxicating Liquor (DUI) in violation of Hawai'i Revised Statutes (HRS) § 291–4(a)(2) (Supp.1989). Caleb was arrested on July 15, 1989, and charged in two separate counts with violating HRS § 291–4(a)(1) (driving under the influence) (Count I) and § 291–4(a)(2) (driving with a blood alcohol level of 0.10 percent or more) (Count II).[1] Following a jury trial, Caleb was acquitted of Count I but convicted of Count II. On appeal, Caleb asserts that his conviction was not supported by substantial evidence and was inconsistent with his acquittal in Count I. Based on the following, we affirm the conviction and sentence.

## I. BACKGROUND

On July 15, 1989, at approximately 1:15 in the early morning, Honolulu Police Officer Bumanglag was in the process of transporting a prisoner when he was "waved down" by an unidentified caucasian male who pointed out a vehicle that was located on the H-1 freeway at a safety zone next to the Punahou Street offramp. Officer Bumanglag testified that, when he approached the identified location, he saw a vehicle with its headlights on, the motor running and its front end positioned against a "yellow cylinder". He looked inside the vehicle and saw a man, later identified as Caleb, "passed out" in the driver's seat. He stated that when he grabbed Caleb's wrist to check for a pulse, Caleb woke up. Caleb proceeded to ask Officer Bumanglag what had happened, thus emitting what Officer Bumanglag detected as a "strong odor of alcohol" coming from Caleb's breath. He further noticed that Caleb's eyes were "glassy." Officer Bumanglag requested Caleb's driver's license and vehicle papers and further requested that he step out of the vehicle. Officer Bumanglag testified that he asked Caleb various questions, including whether Caleb had taken any medication, to which Caleb replied "no". Officer Bumanglag then administered a field sobriety test. He opined that Caleb performed poorly, and he therefore proceeded to arrest Caleb.

Officer Bumanglag transported Caleb to the main police station, read Caleb the "implied consent" law,[2] and Caleb chose to take

---

1. On the date of Caleb's arrest, the DUI statute, HRS § 291–4(a), provided as follows:

    A person commits the offense of driving under the influence of intoxicating liquor if:
    (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor; or
    (2) The person operates or assumes actual physical control of the operation of any vehicle with 0.10 per cent or more, by weight of alcohol in the person's blood.

2. At the time of Caleb's arrest, HRS § 286–151 (Supp.1992) provided:

    **Implied consent of driver of motor vehicle or moped to submit to testing to determine alcohol content of blood.** (a) Any person who operates a motor vehicle or moped on the public highways of the State shall be deemed

to have given consent, subject to this part, to a test approved by the director of health of the person's breath or blood for the purpose of determining the alcoholic content of the person's blood.

(b) The test or tests shall be administered at the request of a police officer having reasonable grounds to believe the person driving or in actual physical control of a motor vehicle or moped upon the public highways is under the influence of intoxicating liquor or drugs only after (1) a lawful arrest, and (2) the person has been informed by a police officer of the sanctions of [HRS] section 286–155.

(c) If there are reasonable grounds to believe that a person is in violation of [HRS] section 291–4, then such person shall have the option to take a breath or blood test, or both, for the purpose of determining the alcoholic content of that person's blood.

a breath test. Honolulu Police Matron Sylvia Dawson administered the breath intoxilizer test to Caleb. The test result indicated that Caleb's blood alcohol level was 0.134 percent, above the 0.10 legal limit.[3]

At trial, Caleb testified that he had pulled over to the safety zone because he was feeling ill and that he had then ingested some "Nyquil" cold and flu medicine after he parked his car. Caleb testified that he believed he had a reaction to the medication, which contains twenty-five percent alcohol, and thereafter fell asleep.

Relevant to this appeal, the trial court instructed the jury that:

> The defendant is charged with more than one offense under separate counts for the complaint. Each count and the evidence that applied to that count is to be considered separately. The fact that you may find the defendant not guilty or guilty of one of the counts charged does not mean you must reach the same verdict with respect to any other count charged.

> The defendant is charged with the offense of driving under the influence of intoxicating liquor. This offense is being charged and can be proved by the State for the alternative. These alternatives have been designated as Count 1 and Count 2.

> Proof of the alternative of Count 1 requires a showing that at the time in question, the defendant was under the influence of intoxicating liquor.

> Proof of the alternative of Count 2 requires a showing, by chemical or other approved analysis, that at the time for question, the defendant had a blood alcohol content of 0.10 percent or more.

> Proof of either alternative or both alternatives will result for the defendant's conviction of only one offense of driving under the influence of intoxicating liquor.

> . . . .

> You may bring for either one of the following verdicts: As to count 1, Driving Under the Influence of Intoxicating Liquor:

> 1. Not guilty; or

> 2. Guilty as charged.

> As to Count 2, Driving Under the Influence of Intoxicating Liquor:

> 1. Not guilty; or

> 2. Guilty as charged.

> Your verdicts must be unanimous.

> After verdicts have been reached and your foreperson has signed and dated the verdict forms, you will notify the bailiff, and the Court will be reconvened to receive the verdicts.

The jury returned a verdict of not guilty as to Count I and guilty as to Count II. This appeal followed.

## II.  STANDARD OF REVIEW

■ "We have long held that the evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction[.]" *State v. Batson*, 73 Haw. 236, 248, 831 P.2d 924, 931 (1992). For "[t]he test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there is substantial evidence to support the conclusion of the trier of fact." *Id.* " 'Substantial evidence' . . . is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to reach a conclusion." *State v. Naeole*, 62 Haw. 563, 565, 617 P.2d 820, 823 (1980).

In reviewing jury instructions,

> [a]lthough an error in the instructions to which no objection is made at trial may not be assigned as error on appeal . . . and an error in the instructions which is not properly cited in the points on appeal . . . will not be considered on appeal, . . . appellate courts *may* notice plain errors or defects affecting substantial rights which were not brought to the attention of the court.

*State v. Lemalu*, 72 Haw. 130, 137, 809 P.2d 442, 446 (1991) (citations omitted and emphasis in original).

---

**3.** *See supra* note 1.

## III. DISCUSSION

### A. Inconsistent verdicts

■ This court rejects Caleb's arguments that his conviction was not supported by substantial evidence and was inconsistent with his acquittal in Count I. First, from our review of the record, there is substantial evidence to support Caleb's conviction. Caleb was "in actual physical control of the operation" of the motor vehicle at the time he stopped it in the safety zone. Moreover, Caleb was "operating" the vehicle at the time he was stopped in the safety zone, notwithstanding the fact that he was asleep inside the vehicle. Further, it is uncontroverted that Caleb's blood alcohol content was above the legal limit.

In 1983, the Legislature proposed to "establish more effective sanctions for driving under the influence of intoxicating liquor." Sen.Conf.Comm.Rep. No. 999, in 1983 Senate Journal, at 1477. Specifically, the Legislature intended that a defendant in any criminal prosecution for the offense of driving under the influence of intoxicating liquor, "shall be deemed under the influence of intoxicating liquor if he has ten-hundredths per cent or more by weight of alcohol in his blood." Hse.Stand.Comm.Rep. No. 591, in 1983 House Journal, at 1105. Consequently, a vehicle operator whose blood alcohol level exceeds 0.10 per cent is in violation of the DUI statute.

■ We have long held that DUI is a per se offense under HRS § 291–4(a)(2). *State v. Mezurashi*, 77 Hawai'i 94, 96, 881 P.2d 1240, 1242 (1994); *State v. Christie*, 7 Haw. App. 368, 370, 764 P.2d 1245, 1246, *aff'd*, 70 Haw. 158, 766 P.2d 1198 (1988), *reconsideration denied*, 70 Haw. 661, 796 P.2d 1004, *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). Further,

> [t]he statute provides that a person commits *the* offense of driving under the influence of intoxicating liquor if the person's conduct falls into one of two categories: (1) driving while under the influence *or* (2) driving with a blood alcohol content of 0.10 or more. A blood alcohol content of at least 0.10 per cent is one method of proving the influence of alcohol.

*State v. Grindles*, 70 Haw. 528, 531, 777 P.2d 1187, 1190 (1989) (emphasis in original) (citations omitted). Therefore, it is not necessary to prove that both statutory criteria have been met in order to sustain a conviction. Either method may be applied in the alternative to warrant a conviction. Thus, it is clear that the record contains substantial evidence supporting the jury's verdict that Caleb's blood alcohol level was above the legal limit.

■ Second, Caleb's argument that his conviction of Count II is inconsistent with the acquittal of Count I is without merit. "It has long been the approved practice to charge, by several counts, the same offense as committed in different ways or by different means, to such extent as will be necessary to provide for every possible contingency in the evidence." *State v. Lemalu*, 72 Haw. 130, 809 P.2d 442 (1991) (quoting 41 Am.Jur.2d *Indictments and Informations* § 223, at 1016 (1968)). In *Lemalu*, we held that "DUI, by statute, is precisely such an offense. Thus, charging the two methods of proving DUI in separate counts is in keeping with approved practice." *Id.* at 134, 809 P.2d at 444. Moreover, in *Grindles*, 70 Haw. at 531, 777 P.2d at 1190, we held that the DUI statute provides two alternative means for conviction of a single offense.

In the instant case, the jury properly followed the jury instructions and concluded that, even though Caleb was not guilty of the first statutory alternative (Count I), he was guilty of the second alternative (Count II). The verdict was not inconsistent because in order to convict under HRS § 291–4(a)(2), it was not necessary for the prosecution to prove that Caleb was "under the influence." It was necessary only to prove that his blood alcohol content was above the legal limit. Thus, the jury's verdict of acquitting Caleb as to Count I and convicting him as to Count II was not inconsistent.

### B. Separate offenses

■ Caleb was charged in two counts alleging one DUI offense; however, the trial court instructed the jury, among other things, that Caleb was charged with more than one offense and issued the jury multiple

verdict forms. Although Caleb did not raise this issue on appeal, we address whether the trial court committed plain error by instructing the jury that Caleb was charged with more than one offense.

In *Lemalu, supra,* the defendant was charged with two separate counts for a single DUI offense. Because the trial court instructed the jury that the defendant was charged with more than one offense, in addition to the trial court's issuing the jury multiple verdict forms, we held that the trial court committed plain error. Similarly, in the present case, the trial court instructed the jury that Caleb was charged with more than one offense, and the jury was issued multiple verdict forms. In *Lemalu* we held that:

> Considering that the jury was instructed to return either a "not guilty" or "guilty as charged" on separate verdict forms for each count and was given [the aforementioned jury instructions], we find it highly probable that it was led to believe that the DUI counts against Lemalu constituted separate crimes.
>
> While we recognize the substantial prejudice created by the use of [jury instructions] that may characterize a single offense as separate crimes[ ], coupled with the use of multiple verdict forms, we emphasize that such prejudice arises here because DUI was the only offense presented to the jury.

*Lemalu,* 72 Haw. at 138, 809 P.2d at 446. Consequently, we vacated Lemalu's conviction.

Conversely, in the present case, a review of the jury instructions in their entirety establishes that they did not create substantial prejudice. Aside from the similarities between the instructions in the present case and *Lemalu,* the trial court in the present case instructed the jury that:

> The defendant is charged with the offense of driving under the influence of intoxicating liquor. This offense is being

charged and can be proved by the State for the alternative. These alternatives have been designated as Count 1 and Count 2.

> Proof of the alternative of Count 1 requires a showing that at the time for question, the defendant was under the influence of intoxicating liquor.
>
> Proof of the alternative of Count 2 requires a showing, by chemical or other approved analysis, that at the time for question, the defendant had a blood alcohol content of .10 percent or more.
>
> *Proof of either alternative, or both alternatives, will result for the defendant's conviction of only one offense of driving under the influence of intoxicating liquor.*

(Emphasis added.) The trial court resolved any ambiguities that may have resulted from the "more than one offense" instruction by thoroughly explaining to the jury that Caleb was charged with *one* offense of driving under the influence of intoxicating liquor, and that there were *two* ways of finding him guilty as to the one offense. Unlike *Lemalu,* the trial court in the present case alleviated the potential problem by clarifying that Caleb was charged with only one offense. Therefore, any error that occurred as a result of the "more than one offense" instruction was harmless. Accordingly, we hold that the trial court did not commit plain error.

## IV. CONCLUSION

Based on the foregoing reasons, we reject Caleb's contentions and affirm the judgment of the circuit court.