276 P.3d 617

**STATE of Hawai'i, Respondent/Plaintiff–Appellee,**

v.

**Kevin K. NESMITH, Petitioner/Defendant–Appellant.**

**State of Hawai'i, Respondent/Plaintiff–Appellee,**

v.

**Chris F. Yamamoto, Petitioner/Defendant–Appellant.**

**Nos. SCWC–10–0000072, SCWC–30438.**

Supreme Court of Hawai'i.

April 12, 2012.

Timothy I. MacMaster for Petitioners/Defendants–Appellants.

Keith M. Kaneshiro, Delanie Prescott-Tate, Stephen K. Tsushima, and Sonja P. McCullen for Respondent/Plaintiff–Appellee.

RECKTENWALD, C.J., NAKAYAMA, DUFFY, and McKENNA, JJ.; with ACOBA, J., concurring and dissenting.

Opinion of the Court by McKENNA, J.

In these cases consolidated for disposition, we (1) hold that pursuant to *State v. Wheeler*, 121 Hawai'i 383, 219 P.3d 1170 (2009), a charge of operating a vehicle under the influence of an intoxicant ("OVUII") under Hawai'i Revised Statutes ("HRS") § 291E–61(a)(1)(2007)[1] must allege the requisite mens rea[2] in order to fully define the offense in unmistakable terms readily comprehensible to persons of common understanding; (2) on the other hand, reaffirm that an OVUII charge under HRS § 291E–61(a)(3)(2007)[3] is an absolute liability offense for which mens rea need not be alleged or proven. We also (3) hold that the ICA erred by relying on general intent cases to hold that mens rea may be inferred from the allegations in an HRS § 291E–61(a)(1) OVUII charge because under *State v. Kalama*, 94 Hawai'i 60, 65, 8 P.3d 1224, 1229 (2000), the distinction between general and specific intent has been abandoned; and (4) that in *Nesmith*, the ICA erred by extending HRS § 806–28 (1993)[4] to the district courts, as the plain language of HRS § 806–2 (1993) limits the application of the criminal procedure provisions of Chapter 806 to the circuit courts. *See State v. Nesmith*, 125 Hawai'i 232, 237 n. 9, 257 P.3d 245, 250 n. 9 (App.2011).

## I. Background

Kevin K. Nesmith ("Nesmith") and Chris F. Yamamoto ("Yamamoto") were each charged by Complaint with OVUII, in violation of HRS §§ 291E–61(a)(1) and/or (a)(3).[5] Nesmith's charge read:

---

1. HRS § 291E–61(a)(1) states, as it did at the time of the alleged offenses:

   A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle ... [w]hile under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

2. "Mens rea" is defined as follows: "As an element of criminal responsibility: a guilty mind; a guilty or wrongful purpose; a criminal intent. Guilty knowledge and wilfulness." *Black's Law Dictionary* 985 (6th ed. 1990).

3. HRS § 291E–61(a)(3) states, as it did at the time of the alleged offenses, "A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle ... [w]ith .08 or more grams of alcohol per two hundred ten liters of breath[.]"

4. HRS § 806–28 states, as it did at the time of the alleged offenses:

   The indictment need not allege that the offense was committed or the act done "feloniously", "unlawfully", "wilfully", "knowingly", "maliciously", "with force and arms", or otherwise except where such characterization is used in the statutory definition of the offense. Where the characterization is so used the indictment may employ the words of the statute or other words substantially of the same import. In alleging the transaction the indictment may use the nounal, adjectival, verbal, or adverbial form of the statutory name of the offense.

5. Conviction for the single offense of OVUII under HRS § 291E–61 can be based on either (or

On or about the 7th day of January, 2010, in the City and County of Honolulu, State of Hawaii, KEVIN K. NESMITH did operate or assume actual physical control of a vehicle upon a public way, street, road, or highway while under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty; and/or did operate or assume actual physical control of a vehicle upon a public way, street, road, or highway with .08 or more grams of alcohol per two hundred ten liters of breath, thereby committing the offense of Operating a Vehicle Under the Influence of an Intoxicant, in violation of Section 291E–61(a)(1) and/or (a)(3) of the *Hawaii Revised Statutes.* KEVIN K. NESMITH is subject to sentencing as a first offender in accordance with Section 291E–61(b)(1) of the *Hawaii Revised Statutes.*

Yamamoto's charge read:

On or about the 28th day of October, 2009, in the City and County of Honolulu, State of Hawai'i, CHRIS F. YAMAMOTO did operate or assume actual physical control of a vehicle upon a public way, street, road, or highway while under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty; and/or did operate or assume actual physical control of a vehicle upon a public way, street, road, or highway with .08 or more grams of alcohol per two hundred ten liters of breath, thereby committing the offense of Operating a Vehicle Under the Influence of an Intoxicant, in violation of Section 291E–61(a)(1) and/or (a)(3) of the *Hawaii Revised Statutes.* CHRIS F. YAMAMOTO is subject to sentencing as a first offender in accordance with Section 291E–61(b)(1) of the *Hawaii Revised Statutes,* and/or CHRIS F. YAMAMOTO is subject to sentencing in accordance with Section 291E–61(b)(2) of the *Hawaii Re-*

*vised Statutes,* where CHRIS F. YAMA-MOTO committed the instant offense as a highly intoxicated driver, as a first offense. 'Highly intoxicated driver' means a person whose measurable amount of alcohol is 0.15 or more grams of alcohol per one hundred milliliters or cubic centimeters of the person's blood, or 0.15 or more grams of alcohol per two hundred ten liters of the person's breath.

In each case, defense counsel moved to dismiss the Complaint based on the argument that the State failed to allege an essential fact, namely the "mens rea" requirements of HRS §§ 291E–61(a)(1) and (a)(3). The trial court denied the motions to dismiss, and the parties proceeded to stipulated fact trials. The trial court found Nesmith and Yamamoto guilty as charged. Specifically, Nesmith was adjudged guilty of violating "HRS [§ ] 291E–61(a)(1),(3),(b)(1)," and Yamamoto was adjudged guilty of violating HRS § 291E–61(a)(1)(3)(b)(1)(2). Both timely appealed.

Before the ICA, Nesmith and Yamamoto each challenged (1) the trial court's denial of their motions to dismiss and (2) their convictions, on the basis that the Complaints were legally deficient for having failed to allege mens rea. The ICA affirmed the judgments of the trial court in a published opinion in the *Nesmith* case and a summary disposition order in the *Yamamoto* case, holding that mens rea need not be alleged in a Complaint charging HRS § 291E–61(a)(1) and/or (a)(3). *See Nesmith,* 125 Hawai'i 232, 257 P.3d 245; and *State v. Yamamoto,* No. 30438, 2011 WL 2179267 (App. June 6, 2011) (SDO).

First, in both *Nesmith* and *Yamamoto,* the ICA held that mens rea is not an element of the offense of OVUII under HRS § 291E–61(a)(3), which is an absolute liability offense. *Nesmith,* 125 Hawai'i at 236, 257 P.3d at 249; *Yamamoto,* SDO at 6. Second, in *Yamamoto,* the ICA held that mens rea can be inferred

---

both) of HRS § 291E–61(a)(1) and/or (a)(3). *See State v. Grindles,* 70 Haw. 528, 530–31, 777 P.2d 1187, 1189–90 (1989) (stating HRS § 291-4 [the predecessor statute to HRS § 291E–61] "sets forth one offense with alternative methods of proof": proof of driving while under the influence or proof of blood alcohol content exceeding 0.10); *see also State v. Caleb,* 79 Hawai'i 336,

339, 902 P.2d 971, 974 (1995) ("Either method may be applied in the alternative to warrant a conviction."); *State v. Mezurashi,* 77 Hawai'i 94, 98, 881 P.2d 1240, 1244 (1994) ("HRS § 291-4(a) [the predecessor statute to HRS § 291E–61(a)] provides two separate ways to prove a single offense of DUI, both of which may rely on an intoxilyzer test result as evidence.").

from the allegations in the charge of OVUII under HRS § 291E–61(a)(1), which the ICA characterized as a general intent crime. *Yamamoto,* SDO at 9. In *Nesmith,* the ICA did not expressly characterize HRS § 291E–61(a)(1) as a general intent crime; rather, it relied on general intent cases to hold that mens rea can be inferred from the allegations in the charge of OVUII under HRS § 291E–61(a)(1). *Nesmith,* 125 Hawai‘i at 237–39, 257 P.3d at 250–52. Finally, in *Nesmith,* the ICA expressly extended HRS § 806–28 to the district courts. *Nesmith,* 125 Hawai‘i at 237, n. 9, 257 P.3d at 250, n. 9. The *Yamamoto* panel, on the other hand, expressly observed that HRS § 806–28 does not apply to the district courts. *Yamamoto,* SDO at 8. Both Nesmith and Yamamoto timely filed applications for writ of certiorari, which we granted and hereby consolidate for disposition.

On certiorari, both applications contain the following first five questions presented:

1. Was the OVUII charge herein legally sufficient[?]

2. Did the OVUII charge herein "fully define" the offense in "unmistakable terms readily comprehensible to persons of common understanding[?]" *See State v. Wheeler*[,] 121 Hawai‘i 383, 219 P.3d 1170 (2009)[.]

3. What are the "essential facts" that must be included in an OVUII charge?

4. What *mens rea,* if any, is the State required to prove in an OVUII case?

5. What *mens rea,* if any, is the State required to plead in an OVUII complaint?

Each's sixth question presented can be summarized as follows: Did the ICA gravely err in concluding (1) that OVUII based on blood alcohol content and charged under HRS § 291E–61(a)(3) is an absolute liability offense; and (2) that the mental state for OVUII under HRS § 291E–61(a)(1) can be inferred without specification in the charge?

Although we agree that HRS § 291E–61(a)(3) is an absolute liability offense for which mens rea need not be alleged or proven, we hold that the ICA erred in its holdings regarding HRS § 291E–61(a)(1) in three ways. First, we hold that the HRS § 291E–61(a)(1) charges as written (omitting mens rea) failed to fully define the HRS § 291E–61(a)(1) offense in unmistakable terms readily comprehensible to persons of common understanding. Second, this holding rejects the ICA's characterization of HRS § 291E–61(a)(1) as a general intent offense for which mens rea may be inferred from the allegations in the charge. Under *Kalama,* 94 Hawai‘i 60, 8 P.3d 1224, the distinction between general and specific intent has been abandoned. Third, we hold that the *Nesmith* majority erred by extending HRS § 806–28 to the district courts, as the plain language of HRS § 806–2 limits the application of the criminal procedure provisions of Chapter 806 to the circuit courts.

## II. Discussion

A criminal charge serves multiple purposes. To initiate the criminal process, a charge must sufficiently state an offense to establish the court's jurisdiction over a case. *State v. Cummings,* 101 Hawai‘i 139, 142, 63 P.3d 1109, 1112 (2003). The sufficiency of a charge also implicates an accused's rights under the Hawai‘i Constitution, article I, sections 5, 10 and 14. First, under article I, section 5, "No person shall be deprived of life, liberty or property without due process of law[.]" Second, under article I, section 14, an accused is entitled to adequate notice of the charges against him or her: "In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation[.]" Third, under article I, section 10, an indictment must be sufficiently specific to protect a person from being charged twice for the same offense: "[N]or shall any person be subject for the same offense to be twice put in jeopardy[.]"

As to the content and form of the charge, the State is required to charge OVUII offenses in writing. *See* Hawai‘i Rules of Penal Procedure ("HRPP") Rule 7(a)(2009). "The charge shall be a plain, concise and definite statement of the essential facts constituting the offense charged." HRPP Rule 7(d)(2009). "[A] charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process." *State v. Mita,*

124 Hawai'i 385, 390, 245 P.3d 458, 463 (2010) (citations omitted).

> In general, "[w]here the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient."

*Wheeler*, 121 Hawai'i at 393, 219 P.3d at 1180 (citations omitted).

In some cases, however, a charge tracking the language of the statute defining the offense nevertheless violates an accused's due process rights.

> This is so because although "some statutes in our criminal laws so clearly and specifically define[ ] the offense that nothing more is required in [a charge] than the adoption of language of the statute, other statutes fail to sufficiently describe the crime and [a charge] couched merely in the language of such a statute would violate due process."

*State v. Israel*, 78 Hawai'i 66, 73, 890 P.2d 303, 310 (1995)(quoting *Territory v. Yoshimura*, 35 Haw. 324, 328 (1940)).

Nesmith and Yamamoto allege that their OVUII charges were deficient for failing to allege mens rea. We agree as to the HRS § 291E–61(a)(1) charge, but disagree as to the HRS § 291E–61(a)(3) charge. First, an HRS § 291E–61(a)(1) charge omitting mens rea does not fully define the offense in unmistakable terms readily comprehensible to persons of common understanding. As such, Nesmith's and Yamamoto's HRS § 291E–61(a)(1) charges violated their right to be informed of the nature and cause of the accusation. Second, the omission of mens rea in an HRS § 291E–61(a)(3) charge comports with the legislature's intent to make that type of OVUII offense a strict liability offense. As such, those charges were sufficient.

**A. An "intentional, knowing, or reckless" mens rea must be included in a Complaint alleging violation of HRS § 291E–61(a)(1).**

■ HRS § 291E–61(a)(1) states:

> **Operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle: (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

In order to convict a person of any criminal offense, the burden is on the prosecution to prove the following, beyond a reasonable doubt:

> **Proof beyond a reasonable doubt.** (1) Except as otherwise provided in section 701–115, no person may be convicted of an offense unless the following are proved beyond a reasonable doubt:
>
> (a) Each element of the offense;
>
> (b) The state of mind required to establish each element of the offense;
>
> (c) Facts establishing jurisdiction;
>
> (d) Facts establishing venue; and
>
> (e) Facts establishing that the offense was committed within the time period specified in section 701–108.
>
> (2) In the absence of the proof required by subsection (1), the innocence of the defendant is presumed.

HRS § 701–114 (1993). The "elements of an offense" are further defined by statute as "such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as: (a) Are specified by the definition of the offense, and (b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction)." HRS § 702–205 (1993).

■■ There is no state of mind specified within HRS § 291E–61(a)(1) itself. As such, HRS § 702–204 applies. It states, in relevant part, "When the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly." Further, "a state of mind with which the defendant acts applies to all elements of the offense, unless otherwise specified in the statute defining the offense." *State v. Vliet*,

95 Hawai'i 94, 99, 19 P.3d 42, 47 (2001) (citations omitted); *see also* HRS § 702–206 (1993). Thus, in order to convict a person of violating HRS § 291E–61(a)(1), the State must prove, beyond a reasonable doubt, (1) conduct, (2) attendant circumstances, and the (3) results of conduct, and an intentional, knowing, or reckless state of mind as to each of these three elements (and prove the rest of the items listed in HRS § 701–114).

Nesmith and Yamamoto's overarching argument is that if mens rea need be proven beyond a reasonable doubt to convict a person of an HRS § 291E–61(a)(1) offense, then mens rea is an essential fact under HRPP Rule 7(d) that must be alleged in the charge, in unmistakable and readily comprehensible terms to persons of common understanding, in order to provide the defendant fair notice. In other words, the argument is that the "essential facts" requirement is broader than the "essential elements" required to be charged. No direct authority is cited for this proposition. In any event, we do not decide this case on the basis that HRPP Rule 7(d) requires the allegation of mens rea as an essential fact. Rather, under *Wheeler*, 121 Hawai'i 383, 219 P.3d 1170, we decide this case on the more fundamental question of whether the HRS § 291E–61(a)(1) charges provided fair notice to Nesmith and Yamamoto of the nature and cause of the accusation.

In *Wheeler*, a defendant was charged with OVUII in violation of HRS § 291E–61(a)(1). 121 Hawai'i at 385, 219 P.3d at 1172. Defense counsel argued that the charge was insufficient because it did not allege an essential element: that the defendant had operated a vehicle on "a public way, street, road, or highway." 121 Hawai'i at 386, 219 P.3d at 1173. This court agreed. 121 Hawai'i at 391, 219 P.3d at 1178.

At that time, as it does now, in order to commit the offense of OVUII under HRS § 291E–61(a)(1), a person must have operated or assumed actual physical control of a vehicle under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty. *Id.* Although HRS § 291E–61(a)(1) itself did not define "operate," HRS § 291E–1 did, as follows: "to drive or assume actual physical control of a vehicle upon a public way, street, road, or highway[.]" *Id.* (emphasis omitted).

This court held, "Although the oral charge here tracked the language of HRS § 291E–61, the failure of the charge to allege that Wheeler was driving his vehicle upon a public way, street, road, or highway at the time of the offense rendered the charge deficient." 121 Hawai'i at 393, 219 P.3d at 1180. This was because the term " 'operate' has been statutorily defined in HRS § 291E–61 in a manner that does not comport with its commonly understood definition." 121 Hawai'i at 394, 219 P.3d at 1181. Compared to the dictionary meaning of "operate," the definition of "operate" in HRS § 291E–1 contained a "geographical limit" that is "neither 'unmistakable' nor 'readily comprehensible to persons of common understanding.' " *Id.* Such a deficient charge would not provide fair notice. 121 Hawai'i at 395, 219 P.3d at 1182. Thus, this court affirmed the ICA's judgment, which vacated and remanded the case to the district court with instructions to dismiss the charge without prejudice. 121 Hawai'i at 386, 219 P.3d at 1173.

Similarly, in this case, at oral argument, the State argued that any person on the street would know a charge of "operating a vehicle under the influence of an intoxicant" to mean drunk driving. However, that common understanding is not reflected in the statutory framework creating the offense of OVUII under HRS § 291E–61(a)(1), under which it is a crime only if one intentionally, knowingly, or recklessly (not negligently) "operates or assumes actual physical control of a vehicle ... [w]hile under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty." As in *Wheeler*, the OVUII offense in this case is statutorily defined as narrower than what is commonly understood to constitute "drunk driving." In that sense, a charge alleging a violation of HRS § 291E–61(a)(1) that omits the statutorily incorporated culpable states of mind from HRS § 702–204 is not readily comprehensible to persons of common understanding. As such, a charge omitting the allegation of mens rea is

deficient for failing to provide fair notice to the accused.

We are cognizant that our case law, statutes, and court rules have complicated the issue of just what must be included in a charge. On one hand, the State argues that the charge need only contain the *"essential elements"* of an offense, and the "elements of an offense" are defined under HRS § 702–205 as "such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as: (a) Are specified by the definition of the offense, and (b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction)." Missing from the recitation of "elements of an offense" is mens rea, which the State acknowledges applies to each element of the offense, pursuant to HRS § 702–206, and must be proven in order to convict a person of violating HRS § 291E–61(a)(1). On the other hand, Petitioners argue that the charge must contain "a plain, concise and definite statement of the *essential facts* constituting the offense charged," pursuant to HRPP Rule 7(d), which must include mens rea, because the State must prove that fact beyond a reasonable doubt to convict a person of the offense of HRS § 291E–61 (a)(1).

Complicating the issue further is our case precedent holding that the omission of mens rea in a charge rendered the charge deficient. We note that even after the adoption of the Hawai'i Penal Code and HRS § 702–205, we struck down charges for failing to include mens rea, characterizing mens rea as an "element" of the offense. *See State v. Jendrusch,* 58 Haw. 279, 282, 567 P.2d 1242, 1244 (1977) ("The failure of the complaint to set forth this essential element [of intent] as defined by the statute or to describe it with sufficient specificity so as to establish penal liability rendered it fatally defective."); *State v. Faulkner,* 61 Haw. 177, 178, 599 P.2d 285, 286 (1979) ("Intent is an essential element of the crime of criminal attempt . . . No allegation of intent was made."); *State v. Yonaha,* 68 Haw. 586, 586, 723 P.2d 185, 185–86 (1986)("[The charge] omitted the element of intent which is expressly included in the statute."). These cases are in tension with the statutory definition of "elements of an offense" in HRS § 702–205, which does not include mens rea.

Given our statutory framework, it seems clear that mens rea is not an "element of an offense" under HRS § 702–205. *See also State v. Klinge,* 92 Hawai'i 577, 584, n. 3, 994 P.2d 509, 516, n. 3 (2000)("[U]nder [the statute defining the offense], state of mind is not an 'element' of the criminal offense.") That conclusion does not end our inquiry, however. In resolving the issue of whether mens rea must nonetheless be alleged in an HRS § 291E–61(a)(1) charge, we note that we have previously held that failure to allege more than just "essential elements" can be fatal to a charge. *See, e.g., Territory v. Goto,* 27 Haw. 65, 102 (1923)(Peters, J., concurring)("Failure of an indictment to state *facts* sufficient to constitute an offense against the law is jurisdictional . . . .")(emphasis added); *see also State v. Vanstory,* 91 Hawai'i 33, 44, 979 P.2d 1059, 1070 (1999)("It is well settled that 'the *material parts* which constitute the offense charged must be stated in the indictment, and they must be proved in evidence[,]' by the State beyond a reasonable doubt.") (emphasis added; citations omitted)(superseded by statute on other grounds).

*State v. Elliott* provides one illustration of how omission of facts in a charge can render a charge deficient. 77 Hawai'i 309, 884 P.2d 372 (1994). In that case, this court examined the following charge alleging resisting arrest:

> On or about the 28th day of June, 1991 in Kona, County and State of [Hawaii], Marian Lois Elliot attempted to prevent a Peace Officer acting under color of his official authority from effecting an arrest by using or threatening to use physical force against the peace officer or another thereby committing the offense of resisting arrest in violation of Section 710–1026(1)(a) [Hawaii] Revised Statutes as amended.

77 Hawai'i at 310, 884 P.2d at 373 (emphasis omitted). The charge stemmed from an incident in which Elliot allegedly attempted to bite one police officer and successfully bit another. *See id.* At the time of the offense, the resisting arrest statute read:

> **Resisting arrest.** (1) A person commits the offense of resisting arrest if he intentionally prevents a peace officer acting under color of his official authority from effecting an arrest by: (a) Using or

threatening to use physical force against the peace officer or another[.]"

77 Hawai'i at 310 n. 2, 884 P.2d at 373 n. 2 (emphasis omitted).

In *Elliott*, the petitioner challenged the sufficiency of this oral charge for the first time on appeal, so this court liberally reviewed the oral charge in favor of its validity pursuant to *State v. Motta*, 66 Haw. 89, 657 P.2d 1019 (1983). 77 Hawai'i at 311, 884 P.2d at 374. Even under a liberal review, we held that the charge could not be reasonably construed to state the offense of resisting arrest. 77 Hawai'i at 313, 884 P.2d at 376. First, the oral charge was deficient because it was unclear which "peace officer" it referenced. 77 Hawai'i at 312, 884 P.2d at 375. Second, the charge was also unclear as to whether the phrase "using or threatening to use physical force" related to the petitioner's alleged act of trying to bite one officer or her alleged act of successfully biting the other officer. *Id.* Third, this court held, "the requisite state of mind was omitted from the charge and we perceive no way in which we could reasonably construe it to charge resisting arrest or any included offense." 77 Hawai'i at 313, 884 P.2d at 376.

Like *Elliott*, in this case, the "intentional, knowing, or reckless" state of mind requirements, though not an "element of an offense" under HRS § 702–205, needed to be charged in an HRS § 291E–61(a)(1) Complaint to alert the defendants of precisely what they needed to defend against to avoid a conviction. A charge omitting the mens rea requirements would not alert the Petitioners that negligently operating a vehicle under the influence of an intoxicant in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty, for instance, is not an offense recognized under HRS § 291E–61(a)(1). In short, mens rea must be alleged in an HRS § 291E–61(a)(1) charge.

Lastly, we take note of two other errors in the ICA's HRS § 291E–61(a)(1) holding. In affirming Nesmith's and Yamamoto's convictions, the ICA characterized HRS § 291E–61(a)(1) as a general intent offense (or relied on general intent cases) for which intent may be inferred from the allegations in the charge; and (2) the *Nesmith* majority extended HRS § 806–28 to the district courts.

*Yamamoto*, SDO at 9; *Nesmith*, 125 Hawai'i at 237, n. 9, 257 P.3d at 250, n. 9. Each of these holdings was erroneous.

### 1. The General Intent Holding

The *Yamamoto* panel held, "[I]n a charge of OVUII under HRS § 291E–61(a)(1), a general intent crime, the state of mind can be inferred without specification in the charge." *Yamamoto*, SDO at 9 (footnoting citations to *State v. Kane*, 3 Haw.App. 450, 457, 652 P.2d 642, 647–48 (1982); *State v. Bull*, 61 Haw. 62, 66, 597 P.2d 10, 13 (1979); *Territory v. Tacuban*, 40 Haw. 208, 212 (1953); and *State v. McDowell*, 66 Haw. 650, 651, 672 P.2d 554, 555 (1983)).

The distinction between "general intent" and "specific intent" crimes, however, no longer applies. This court noted in 2000 that, upon the adoption of the Hawai'i Penal Code in 1973, the only relevant states of mind are intentional, knowing, reckless, and negligent states of mind.

[A]rguments concerning specific and general intent are no longer relevant. Hawai'i has adopted the [Model Penal Code's] state of mind requirements, which have abandoned the common law concepts of "specific intent" and "general intent," in favor of four defined culpable states of mind.... In that regard, this court, in applying the [Hawai'i Penal Code], has indicated that a state of mind with which the defendant acts applies to all elements of the offense, unless otherwise specified in the statute defining the offense.

*Kalama*, 94 Hawai'i at 65, 8 P.3d at 1229 (citations omitted). *See also State v. Pesentheiner*, 95 Hawai'i 290, 300, n. 10, 22 P.3d 86, 96, n. 10 (App.2001) ("By clearly articulating the mens rea elements utilized by the penal code, HRS § 702–206 extirpates from any analysis of guilt or innocence reference to general or specific intent.").

The *Nesmith* majority, unlike the *Yamamoto* panel, did not explicitly use the term "general intent" when it held that an intentional, knowing, or reckless state of mind can be inferred from the conduct alleged in an HRS § 291E–61(a)(1) charge. 125 Hawai'i at 238, 257 P.3d at 251. However, in reach-

ing this holding, the *Nesmith* majority favorably cited *Kane, McDowell,* Tacuban, and *State v. Torres,* 66 Haw. 281, 660 P.2d 522 (1983). 125 Hawai'i at 237–38, 257 P.3d at 250–51.

*Kane* and *McDowell* are cases in which our appellate courts have specifically held that intent can be inferred from the allegations in the charge for general intent crimes. *Kane* held, "With a general intent crime, the statement of the act itself implies the requisite intent." 3 Haw.App. at 457–58, 652 P.2d at 647 (citing *Tacuban* ). *McDowell* held that possession of a sawed-off rifle is a general intent crime; further, under HRS § 806–28, a particularized allegation of general intent in the indictment is not required. 66 Haw. at 651, 672 P.2d at 555 (citing *Kane* ).

We note, however, that *Torres* and *Tacuban* are not explicitly general intent cases. *Torres* held, without addressing whether incest was a general intent crime, "Incest as charged here is an offense where intent can be inferred because 'sexual intercourse' under the circumstances alleged could only be a willful act." 66 Haw. at 289, 660 P.2d at 527. Similarly, *Tacuban* held, without any discussion on general intent, "An essential ingredient of an offense [in this case, gambling] may be alleged inferentially as well as directly and when so alleged is sufficient[.]" 40 Haw. at 212 (citation omitted).

In light of the clear abrogation of the general/specific intent distinction in *Kalama,* it was erroneous for the *Yamamoto* panel to hold that HRS § 291E–61(a)(1) is a general intent offense for which mens rea can be inferred from the allegations in the charge. To the extent the *Nesmith* majority may have relied on the distinction between general and specific intent in reaching its holding, it also erred.

## 2. The Extension of HRS § 806–28 to the District Courts

■ In further support of its holding that intent can be inferred from the allegations in an HRS § 291E–61(a)(1) charge, the *Nesmith* majority noted that HRS § 806–28 [6] does not require an indictment to allege a mental state, if none is specified in the statute defining the offense. 125 Hawai'i at 237,

257 P.3d at 250. It then footnoted its extension of HRS § 806–28 to district court proceedings (like OVUII) as follows: "Although HRS § 806–28 refers to an indictment,' which is used to charge a felony offense, we see no logical reason why its provisions would not also apply to a complaint used to charge a petty misdemeanor offense." 125 Hawai'i at 237, n. 9, 257 P.3d at 250, n. 9. The *Yamamoto* panel arrived at a contrary conclusion, to hold, "[T]he provisions of HRS § 806–28 are not applicable to district court proceedings[.]" *Yamamoto,* SDO at 8. Although neither Petitioner has briefed the HRS § 806–28 issue, and although the State concluded at oral argument that HRS § 806–28 does not apply to district court proceedings, we address it in light of the inconsistency it has created in the ICA's own decisions.

■ HRS § 806–2 expressly provides, "Notwithstanding any provision of this chapter [Chapter 806: Criminal Procedure: Circuit Courts] that the same applies to courts of record, such provision shall not, without more, apply to district courts." "[T]he starting point for interpreting a statute is the language of the statute itself." *State v. Moniz,* 69 Haw. 370, 374, 742 P.2d 373, 376 (1987) (citation omitted). Here, the plain language of HRS § 806–2 counsels against the extension of circuit court criminal procedure to the district courts "without more." The *Nesmith* majority did not provide a reason to apply HRS § 806–28 to the district courts beyond its observation that there was "no logical reason" not to.

An extension of circuit court criminal procedure to the district courts is a result contrary to the intent of the legislative body that drafted the statute. Legislative history behind HRS § 806–2's identically worded predecessor (HRS § 711–2) reveals that criminal procedure for circuit courts was generally not intended to apply to the district courts, when district courts became courts of record in 1972:

Chapter 711, "criminal procedure; circuit courts", contains several provisions tying the application thereof to courts of record. Upon the taking effect of Act 188, Laws 1970, district courts will be courts of rec-

6. *See* n.4, *supra.*

ord as provided in section 604–17. Section 31B presents a proposed new section 711–2 providing that the mere use of the term courts of record does not itself make a provision contained in chapter 711 applicable to district courts. The title has been amended to include chapter 711.

H. Stand. Comm. Rep. No. 333, in 1971 House Journal, at 845. Consequently, the *Nesmith* majority erred in extending HRS § 806–28 to the district courts. We now turn to the issue of whether mens rea must be alleged in an HRS § 291E–61(a)(3) charge.

### B. An HRS § 291E–61(a)(3) offense is an absolute liability offense, for which mens rea need not be alleged in the charge (or proven).

■ As a preliminary matter, we note that the mens rea requirements found in the Hawai'i Penal Code are not automatically applicable to offenses defined by statutes outside the penal code, like HRS § 291E–61. *See* HRS § 701–102(3) (1993) ("The provisions of [the Hawai'i Penal Code] are applicable to offenses defined by other statutes, unless the [Hawai'i Penal] Code otherwise provides.") The Hawai'i Penal Code "otherwise provides" in HRS § 702–212(2) (1993), which sets forth an exception to the Code's mens rea requirement where "a legislative purpose to impose absolute liability for such offense or with respect to any element thereof plainly appears." As further discussed below, it is well established that a legislative purpose to make HRS § 291E–61(a)(3) an absolute liability offense plainly appears. Mens rea need not be alleged or proven to convict a person under HRS § 291E–61(a)(3).[7]

Petitioners' argument that mens rea must be alleged in a complaint charging OVUII under HRS § 291E–61(a)(3) is unpersuasive. It is well established that the legislature plainly intended to make this type of OVUII, based on blood alcohol content, a "per se" or "absolute liability" offense, for which no mens rea element need be proven or even alleged. "Since 1983, DUI [Driving under the Influence] has been a *per se* offense under Hawaii Revised Statutes (HRS)

§ 291–4(a)(2) (1985) [the predecessor statute to HRS § 291E–61(a)(3) ] requiring the mere proof of 0.10 percent or more by weight of alcohol in the driver's blood." *State v. Christie*, 7 Haw.App. 368, 370, 764 P.2d 1245, 1246 (1988). *See also Mezurashi*, 77 Hawai'i at 96, 881 P.2d at 1242; *State v. Young*, 8 Haw.App. 145, 153–54, 795 P.2d 285, 291 (1990); *State v. Wetzel*, 7 Haw.App. 532, 539 n. 8, 782 P.2d 891, 895 n. 8 (1989).

The "per se" addition to Hawai'i's drunk driving laws was prompted after Congress enacted the Alcohol Traffic Safety–National Driver Register Act (the "Act"), which amended 23 U.S.C. § 408 to make available incentive grants to states that "adopt and implement effective programs to reduce traffic safety problems resulting from persons driving while under the influence of alcohol." Alcohol Traffic Safety–National Driver Register Act of 1982, Pub.L. No. 97–364, § 101, 96 Stat. 1738, 1738 (1982). The Act provided that a state would be "eligible for a basic grant if such State provides. . . . (C) that any person with a blood alcohol concentration of 0.10 percent or greater when driving a motor vehicle *shall be deemed* to be driving while intoxicated[.]" *Id.* at 1739 (emphasis added).

In 1983, the Hawai'i State Legislature signaled its clear intent to qualify for these federal funds in amending chapter 291. *See* S. Conf. Com. Rep. No. 999, in 1983 Senate Journal, at 1478 ("[The Joint Senate Committees on Transportation and the Judiciary] are aware that certain federal funds are available to the State, provided that the State's drunk driving laws conform to federal standards. Your Committees find that this measure would enhance qualification for such federal funds."); *see also* H. Stand. Com. Rep. 591, in 1983 House Journal, at 1105 ("Furthermore, your Committee has received testimony from the Department of Transportation that the state must comply with certain federal requirements to qualify for federal grants. These requirements and funding were enacted by Congress in an effort to provide an incentive for states to reduce alcohol[-]related traffic accidents."). The

---

7. There is no similar legislative purpose to impose absolute liability for an HRS § 291E–61(a)(1) offense that plainly appears; therefore,

the mens rea requirements in HRS § 702–204 apply to an HRS § 291E–61(a)(1) offense, as discussed *supra*.

House recorded its understanding of the amendment to HRS § 291 in language tracking the federal Act's goals: "The defendant *shall be deemed* under the influence of intoxicating liquor if he has ten-hundredths per cent or more by weight of alcohol in his blood." H. Stand. Com. Rep. No. 591, in 1983 House Journal, at 1105 (emphasis added). The legislature then amended chapter 291 to provide: "A person commits the offense of driving under the influence of intoxicating liquor if: ... (2) The person operates or assumes actual physical control of the operation of any vehicle with 0.10 per cent or more by weight of alcohol in the person's blood." 1983 Haw. Sess. Laws Act 117, § 1 at 208.

Subsequent case law supports this interpretation. *See Wetzel,* 7 Haw.App. 532, 782 P.2d 891; *Mezurashi,* 77 Hawai'i 94, 881 P.2d 1240; *Christie,* 7 Haw.App. 368, 764 P.2d 1245. Significantly, in reaffirming that driving under the influence of alcohol, as measured by blood alcohol content, was a per se offense, this court discussed the legislative history of Act 117 as follows:

> In 1983, the Legislature proposed to "establish more effective sanctions for driving under the influence of intoxicating liquor." Sen. Conf. Comm. Rep. No. 999, in 1983 Senate Journal, at 1477. Specifically, the Legislature intended that a defendant in any criminal prosecution for the offense of driving under the influence of intoxicating liquor, "*shall be deemed* under the influence of intoxicating liquor if he has ten-hundredths per cent or more by weight of alcohol in his blood." Hse. Stand. Comm. Rep. No. 591, in 1983 House Journal, at 1105. Consequently, a vehicle operator whose blood alcohol level exceeds 0.10 per cent is in violation of the DUI statute. We have long held that DUI is a per se offense under HRS § 291-4(a)(2). *State v. Mezurashi,* 77 Hawai'i 94, 96, 881 P.2d 1240, 1242 (1994); *State v. Christie,* 7 Haw. App. 368, 370, 764 P.2d 1245, 1246, aff'd, 70 Haw. 158, 766 P.2d 1198 (1988), *reconsideration denied,* 70 Haw. 661, 796 P.2d 1004, *cert. denied,* 490 U.S. 1067 [109 S.Ct. 2068, 104 L.Ed.2d 633] (1989).

*Caleb,* 79 Hawai'i at 339, 902 P.2d at 974 (emphasis added).

In the context of jury instructions, the ICA once again reaffirmed that the legislative history indicated that driving under the influence based on blood alcohol content was a per se offense, with reference to the absolute liability framework set forth in HRS § 702-212:

> Defendant contends that regarding the elements of the HRS § 291-4(a)(2) offense, the trial court incorrectly refused to instruct the jury that a "finding of a mens rea as to the element of operating a vehicle [was required]." We disagree.
>
> HRS § 702-204 (1985) provides that when a statute is silent as to the state of mind required to establish an element of an offense, the element is established by proving that "a person acts intentionally, knowingly, or recklessly." However, HRS § 702-212(2) (1985) states that the state of mind requirements do not apply to:
> A crime defined by statute other than [the Hawai'i Penal] Code, insofar as a legislative purpose to impose absolute liability for such offense or with respect to any element thereof plainly appears.
>
> By enacting HRS § 291-4(a)(2), "the legislature permitted proof of DUI by merely showing that a defendant drove a vehicle with a BAC of 0.10 percent or more." *State v. Wetzel,* 7 Haw.App. [532, 539], 782 P.2d 891, 895 (1989) (footnote omitted). Thus, the legislative purpose of HRS § 291-4(a)(2) was "to impose absolute liability for such offense or with respect to any element thereof," as provided in HRS § 702-212(2). Accordingly, we stated in *State v. Christie,* 7 Haw.App. [368, 370], 764 P.2d 1245, 1246, aff'd, 70 Haw. 158, 766 P.2d 1198 (1988), cert. denied, [490 U.S. 1067], 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989), that DUI has been "a *per se* offense" under HRS § 291-4(a)(2) since 1983.
>
> The trial court did not err in refusing to instruct the jury that a finding of *mens rea* was required under HRS § 291-4(a)(2).

*Young,* 8 Haw.App. at 153-54, 795 P.2d at 290-91.

There are no substantial differences between HRS § 291-4 and HRS § 291E-61 that would limit the current application of this line of case law. Further, the statutory

offense of DUI/OVUII, from Territorial days to the present, has not changed much. When the Territory of Hawai'i first established a DUI law in 1949, the act read:

Sec. 11721. **Driving under the influence of intoxicating liquor.** Whoever operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor shall be punished by a fine not exceeding one thousand dollars or by imprisonment for not more than one year, or both.

Sec. 11722. **Evidence of intoxication.** In any criminal prosecution for a violation of section 11721, the amount of alcohol in the defendant's blood within three hours after the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath or other bodily substance shall be competent evidence that the defendant was under the influence of intoxicating liquor at the time of the alleged violation and shall give rise [to the presumption of intoxication at the time of the alleged violation if the defendant's blood alcohol content was 0.15 per cent or more, by weight of alcohol.]

Laws of the Territory of Hawaii Passed by the Twenty–Fifth Legislature, Regular Session 1949, Act 283, § 1 at 602.

As explained *supra,* in 1983, Hawai'i's DUI law was amended to state:

A person commits the offense of driving under the influence of intoxicating liquor if: ... (2) The person operates or assumes actual physical control of the operation of any vehicle with 0.10 per cent or more, by weight of alcohol in the person's blood.

1983 Haw. Sess. Laws Act 117, § 1 at 208. Immediately before HRS § 291–4 was recodified as HRS § 291E–61 (in 2000), it read as follows:

§ 291–4 Driving under the influence of intoxicating liquor. (a) A person commits the offense of driving under the influence of intoxicating liquor if:

. . . .

(2) The person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood or .08 or more grams of alcohol per two hundred ten liters of breath.

Except for the consolidation of language concerning driving under the influence of drugs, the current HRS § 291E–61(a) is nearly identical to its predecessor:

§ 291E–61 **Operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

. . . .

(3) With .08 or more grams of alcohol per two hundred ten liters of breath; or

(4) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.

As such, the line of cases holding HRS § 291–4(a)(2) to be an absolute liability offense continues to apply with the same force to the instant appeals. The legislature is presumed to be aware of judicial constructions of HRS § 291–4(a)(2), and it has had abundant opportunities to amend the statute if it intended for HRS § 291–4(a)(2) and its successor, HRS § 291E–61(a)(3), not to constitute absolute liability offenses. *See Territory v. Makaaa,* 43 Haw. 237, 240 (1959). In light of the legislature's inaction, we conclude that HRS § 291E–61(a)(3) remains an absolute liability offense.[8]

---

8. We take a moment to respond to some of assertions raised in the Concurrence/Dissent. First, the Concurrence/Dissent states, "HRS § 291E–61(a)(1) is not merely a regulatory statute and conviction thereunder can result 'in the possibility of imprisonment and condemnation[,]' to reiterate, construing it as a strict liability offense under these circumstances is 'indefensible.'" Concurrence/Dissent, Section VII. The Commentary does state, "Subsection (2) provides for an extremely limited situation. The Code takes the general position that absolute or strict liability in the penal law is indefensible in principle if conviction results in the possibility of imprison-

ment and condemnation." The Commentary continues, however, as follows:

Therefore, *within the immediate context of the Penal Code,* criminal liability must be based on culpability. However, it is recognized that the scope of the Penal Code is finite. In other codes or Titles penal statutes exist which prima facie impose absolute criminal liability. Subsection (2) allows for the imposition of such criminal liability *in the case of crimes defined by statutes other than the Penal Code—* when and only when—"a legislative purpose to impose absolute liability for such offense or

There is no mens rea requirement in HRS § 291E–61(a)(3). Proof of mens rea is not necessary to support a conviction under that statute. An allegation of mens rea is not necessary in the charge. The ICA did not gravely err in so concluding.

## III. Conclusion

We hold that the ICA correctly concluded that HRS § 291E–61 (a)(3) is an absolute liability offense for which no mens rea need be alleged or proven, but that the ICA erred by (1) holding that mens rea need not be alleged in an HRS § 291E–61(a)(1) charge, as without such an allegation, the Complaint fails to fully define the offense in unmistakable terms readily comprehensible to persons of common understanding; (2) characterizing HRS § 291E–61(a)(1) as a general intent offense (or relying on general intent cases) to hold that mens rea may be inferred from the allegations in the charge; and (3) by extending HRS § 806–28 to the district courts.

Consequently, we affirm the ICA's judgments, which affirmed the district court's judgments of conviction and sentence under HRS § 291E–61. The district court adjudged Nesmith and Yamamoto guilty of violating both HRS § 291E–61(a)(1) and (a)(3). Subsections (a)(1) and (a)(3) can each serve as the basis for a conviction under HRS § 291E–61. *See Grindles,* 70 Haw. 528, 530–31, 777 P.2d 1187, 1189–90; *Caleb,* 79 Hawai'i 336, 339, 902 P.2d 971, 974; *Mezurashi,* 77

Hawai'i 94, 98, 881 P.2d 1240, 1244. Insofar as the (a)(3) charge was sufficient, and insofar as neither Nesmith nor Yamamoto challenges the sufficiency of the evidence as to that basis, each's conviction still stands.

Concurring and Dissenting Opinion by ACOBA, J.

I concur in the majority's holding that a culpable state of mind must be alleged in a charge of Operating a Vehicle Under the Influence of an Intoxicant (OVUII) under Hawai'i Revised Statutes (HRS) §§ 291E–61(a)(1) in order to inform a defendant of the nature and cause of the accusation against him or her.[1] Although HRS § 291E–61(a)(1) does not specify a state of mind, pursuant to HRS § 702–204, "[w]hen the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly." Thus, an HRS § 291E–61(a)(1) charge must allege that the operator of the vehicle committed the acts with an intentional, knowing, or reckless state of mind. However, I must respectfully disagree with the remainder of the majority's opinion.

Contrary to the majority's position, our decisions require that with respect to an HRS § 291E–61(a)(1) charge, a state of mind must also be alleged in order to confer jurisdiction on the court. *State v. Yonaha,* 68 Haw. 586, 587, 723 P.2d 185, 186 (1986);

---

with respect to any element thereof plainly appears."
Commentary to HRS § 702–212 (emphasis added; footnotes omitted). HRS § 291E–61(a)(3) is an offense found outside of the penal code. We believe that a legislative purpose to impose absolute liability for HRS § 291E–61(a)(3) plainly appears, when the legislature amended that statute to "deem" operating a vehicle with a certain blood alcohol content to constitute driving while under the influence.

Second, the Concurrence/Dissent posits that, in light of the existence of the defense of pathological intoxication found in HRS § 702–230, "it would appear inconsistent to treat HRS § 291E–61(a)(3) as a strict liability offense." Concurrence/Dissent at Section VI.D. It appears that other jurisdictions are split on this issue. *State v. Gurule,* 149 N.M. 599, 604, 252 P.3d 823, 828 (App.2011) (noting jurisdictional split). *Compare, e.g., State v. Hammond,* 118 N.J. 306, 307, 314, 571 A.2d 942, 946 (1990) (holding that the involuntary intoxication defense is not available as to the strict liability offense of driving under

the influence); *State v. West,* 416 A.2d 5, 7, 9 (Me.1980)(same); *People v. Teschner,* 76 Ill. App.3d 124, 126, 31 Ill.Dec. 691, 394 N.E.2d 893, 895 (1979)(same); *with Carter v. State,* 710 So.2d 110, 113 (Fla.App.1998)("The fact that involuntary intoxication is available as a defense, however, is not inconsistent with the fact that a .10 [blood alcohol] reading means that there is impairment" based on strict liability). As such, it remains an open question whether HRS § 702–230 is a defense available to a defendant charged with violating HRS § 291E–61(a)(3). We do not decide the issue here.

1. HRS § 291E–61(a)(1) (Supp.2009) states:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

*State v. Faulkner,* 61 Haw. 177, 178, 599 P.2d 285, 286 (1979); *State v. Jendrusch,* 58 Haw. 279, 281–82, 567 P.2d 1242, 1244 (1977). Additionally, in my view, HRS § 291E–61(a)(3)[2] is not a strict liability offense. Respectfully, to so conclude disregards the principle that criminal liability generally must be based on a culpable state of mind, and ignores the mandate that, in the "[a]bsen[ce of] statutory language expressly imposing absolute liability, the states of mind denominated in HRS § 702–204 will generally apply, because we will not lightly discern a legislative purpose to impose absolute liability." *State v. Eastman,* 81 Hawai'i 131, 140, 913 P.2d 57, 66 (1996) (quoting *State v. Rushing,* 62 Haw. 102, 105, 612 P.2d 103, 106 (1980)).

## I.

In this case, Respondent/Plaintiff–Appellee State of Hawai'i (Respondent) charged Petitioners/Defendants–Appellants Kevin K. Nesmith (Nesmith) and Chris F. Yamamoto (Yamamoto) (collectively, "Petitioners") with OVUII under HRS §§ 291E–61(a)(1) "and/or" (a)(3). The charge against Nesmith stated as follows:

**2.** HRS § 291E–61(a)(3) (Supp.2009) states:
(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
(3) With .08 or more grams of alcohol per two hundred ten liters of breath[.]
HRS § 291E–61 (a)(4) (Supp.2009) states:
(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
(4) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.
Although HRS § 291E–61(a)(4) was not charged and therefore not at issue in this case, the analysis set forth herein would likewise apply to that provision. The term "BAC" is used throughout this opinion to refer to both the blood or breath alcohol content provisions in HRS § 291E–61 and its predecessor statute, HRS § 291–4, interchangeably.

**3.** In *State v. Wheeler,* 121 Hawai'i 383, 386, 391, 219 P.3d 1170, 1173, 1178 (2009) this court held the definition of the term operate, i.e., "to drive or assume actual physical control of a vehicle a vehicle on a public way, street, road, or highway," created an attendant circumstance element of OVUII.

**4.** The charge against Yamamoto stated as follows:

On or about the 7th day of January, 2010, in the City and County of Honolulu, State of Hawai'i, [Nesmith] *did operate or assume actual physical control of a vehicle upon a public way, street, road, or highway while under the influence of alcohol in an amount sufficient to impair* his normal mental faculties or ability to care for himself and guard against casualty; *and/or did operate or assume actual physical control of a vehicle upon a public way, street, road, or highway[3] with .08 or more grams of* alcohol per two hundred ten liters of breath, thereby committing the offense of [OVUII], in violation of Section 291E–61(a)(1) and/or 291E–61(a)(3) ... of the [HRS].

(Emphases added.) The charge against Yamamoto was similar, and also failed to allege any state of mind.[4] Petitioners present the same questions in their applications for writ of certiorari.[5]

## II.

In this jurisdiction, a charge serves two primary, yet distinct, functions. First, be-

On or about the 28th day of October, 2009, in the City and County of Honolulu, State of Hawai'i, [Yamamoto] did operate or assume actual physical control of a vehicle upon a public way, street, road, or highway while under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty; and/or did operate or assume actual physical control of a vehicle upon a public way, street, road, or highway with .08 or more grams of alcohol per two hundred ten liters of breath, thereby committing the offense of [OVUII], in violation of Section 291E–61(a)(1) and/or 291E–61(a)(3) of the [HRS].

**5.** The questions presented in Petitioners' Applications were as follows:

1. Was the OVUII charge herein legally sufficient[?]
2. Did the OVUII charge herein "fully define" the offense in "unmistakable terms readily comprehensible to persons of common understanding[?]
3. What are the "essential facts" that must be included in an OVUII charge?
4. What *mens rea,* if any, is [Respondent] required to prove in an OVUII case?
5. What *mens rea,* if any, is [Respondent] required to plead in an OVUII complaint?

cause "[t]he criminal process begins when the accused is charged with a criminal offense[,]" *State v. Sprattling*, 99 Hawai'i 312, 317, 55 P.3d 276, 281 (2002), a charge must state an offense in order to establish that the court has jurisdiction over the case for "an oral charge, complaint, or indictment that does not *state an offense* contains within it a substantive jurisdictional defect, rather than simply a defect in form, which renders any subsequent trial, judgment of conviction, or sentence a nullity." *State v. Cummings*, 101 Hawai'i 139, 142, 63 P.3d 1109, 1112 (2003) (emphasis added); *see also Territory v. Gora*, 37 Haw. 1, 6 (Haw.Terr.1944) (referring to an alleged failure of the charge to state an offense as a "jurisdictional point"); *Territory v. Goto*, 27 Haw. 65, 102 (Haw. Terr.1923) (Peters, C.J., concurring) ("Failure of an indictment to state *facts sufficient to constitute an offense* against the law is jurisdictional and is available to the defendant at any time.") (Emphasis added.); HRS § 806–34 (1993) (stating that, in an indictment, "the transaction may be stated with so much detail of time, place, and circumstances and such particulars as to the person (if any) against whom, and the thing (if any) in respect to which the *offense* was committed," all of which "are necessary to ... show that the court has jurisdiction, and to give the accused reasonable notice of the facts") (emphasis added).

The inquiry as to whether an offense has been sufficiently charged in this regard is confined to the charge itself since the foregoing inquiry is not a question of whether the defendant had adequate notice of the charges against him or her. *Cummings*, 101 Hawai'i at 143, 63 P.3d at 1113 (stating that "a defect in a complaint is not one of mere form, which is waivable, nor simply one of notice, which may be deemed harmless if a defendant was actually aware of the nature of the accusation against him or her," but the defect "is one of substantive subject matter jurisdiction, 'which may not be waived or dispensed with'" (quoting *Jendrusch*, 58 Haw. at 281, 567 P.2d at 1244)); *see also id.* (stating that "just as the prosecution must prove beyond a reasonable doubt all of the *essential elements* of the offense charged, the prosecution is also required to sufficiently allege them and" such "requirement is not satisfied by the fact

that the accused actually knew them and was not misled by the failure to sufficiently allege all of them") (quoting *State v. Israel*, 78 Hawai'i 66, 73, 890 P.2d 303, 310 (1995) (brackets omitted) (emphasis added)).

The second and equally important function of a charge is to provide a defendant with sufficient information to "inform [the defendant] of the nature and cause of the accusation" against him or her, Haw. Const. Art. I § 14 ("In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation[.]"); *See State v. Corder*, 121 Hawai'i 451, 458, 220 P.3d 1032, 1039 (2009) (stating that because the "'accused shall enjoy the right to be informed of the nature and cause of the accusation[,] ... a charge must be in a legally sufficient form which correctly advises the defendant about the allegations against him or her'" (quoting *Israel*, 78 Hawai'i at 69, 890 P.2d at 306) (brackets and ellipsis omitted)); *State v. Stan's Contracting, Inc.*, 111 Hawai'i 17, 31, 137 P.3d 331, 345 (2006) (stating that HRS § 806–34, which sets forth what an indictment must include, "is grounded in article I, section 14 of the Hawai'i Constitution, which requires that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation'" (brackets and ellipsis in original)); *Sprattling*, 99 Hawai'i at 318, 55 P.3d at 282 (stating that, "'[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation'" (quoting Haw. Const. art. I, § 14) (brackets in original)); *accord Israel*, 78 Hawai'i at 70, 890 P.2d at 307.

It is apparent from the foregoing that a charge must state an offense for purposes of jurisdiction *and* of adequately informing the defendant of the nature and cause of the accusation against him or her. *See Jendrusch*, 58 Haw. at 281, 567 P.2d at 1244 ("Not only does [the charge] fail to state an offense, *but it also* fails to meet the requirement that an accused must be informed of the nature and cause of the accusation against him.") (Internal quotation marks and citation omitted.) (Emphasis added.)

### III.

### A.

The sufficiency of a charge for jurisdictional purposes is measured, *inter alia*, by "'whether it contains the elements of the offense intended to be charged[.]'" *Cummings*, 101 Hawai'i at 142, 63 P.3d at 1112 (quoting *State v. Wells*, 78 Hawai'i 373, 379–80, 894 P.2d 70, 76–77 (1995) (brackets omitted)). "'A charge defective in this regard amounts to a failure to *state an offense*,'" which renders any subsequent trial, judgment of conviction, or sentence a nullity." *Id.* (quoting *Jendrusch*, 58 Haw. at 281, 567 P.2d at 1244) (emphases added).

The charges against Petitioners fail to state an offense because the complaints lack any reference to the requisite states of mind. In *Jendrusch*, 58 Haw. at 280, 567 P.2d at 1243, the defendant alleged that his disorderly conduct charge failed to charge an offense. This court explained in *Jendrusch*, that "[a]n *essential element* of an offense [of disorderly conduct] is *an intent or a reckless disregard* on the part of the defendant that his conduct will have a specific result." *Id.* at 281, 567 P.2d at 1244 (emphases added). According to *Jendrusch*, the "consequence which the statute seeks to prevent is actual or threatened physical inconvenience to, or alarm by, a member or members of the public" and "[t]he *intent* to produce this particular effect, or *recklessly* creating a risk thereof, *is an essential ingredient of the conduct proscribed by the statute*." *Id.* at 281–82, 567 P.2d at 1244 (emphases added). This court held that "[t]he failure of the complaint to set forth this essential element [i.e., the requisite state of mind,] as defined by the statute or to describe it with sufficient specificity so as to establish penal liability rendered it fatally defective." *Id.* at 282, 567 P.2d at 1245; *see also Yonaha*, 68 Haw. at 587, 723 P.2d at 186 (holding that because the charge omitted the element of intent, "the charge was fatally

defective for failure to allege a necessary element"); *Faulkner*, 61 Haw. at 178, 599 P.2d at 286 (stating that "[i]ntent is an essential element of the crime of criminal intent" and "[n]o allegation of intent was made").

*State v. Elliott* would also appear to suggest that the requisite state of mind for an offense is an "essential element" that must be alleged in a charge. In *Elliott*, 77 Hawai'i 309, 310, 884 P.2d 372, 373 (1994), the defendant was charged, *inter alia*, with resisting arrest in violation of HRS § 710–1026(1)(a) (1985).[6] The defendant was orally charged as follows:

> On or about the 28th day of June, 1991 in Kona, County and State of Hawai'i, [the defendant] *attempted to prevent* a Peace Officer acting under color of his official authority from effecting an arrest by using or threatening to use physical force against the peace officer or another thereby committing the offense of resisting arrest in violation of Section 710–1026(1)(a) [HRS] as amended.

*Id.* at 310, 884 P.2d at 373 (emphasis in original) (brackets omitted). *Elliot* held that the charge was defective because "*the requisite state of mind was omitted from the charge* [.]" *Id.* at 313, 884 P.2d at 376 (emphasis added).

Hence, under our case law, for *purposes of establishing jurisdiction*, the "essential elements" of the offense, *Jendrusch*, 58 Haw. at 281, 567 P.2d at 1244, are not defined solely by what is designated as "elements" by the Hawai'i Penal Code (HPC), *see* HRS § 702–205 (defining the elements of an offense as "conduct," "attendant circumstances," and the "results of conduct" as "[a]re specified by the definition of the offense" and "[n]egative a defense"), but by what the prosecution must prove beyond a reasonable doubt. If the charge omits the "essential element" of a culpable state of mind, *Jendrusch*, 58 Haw. at 281, 567 P.2d at 1244, that must be proved beyond a reasonable doubt,[7] the charge

---

6. At the time, HRS § 710–1026(1)(a) provided in pertinent part:

   **Resisting arrest.** (1) A person commits the offense of resisting arrest if he *intentionally prevents* a peace officer acting under color of his official authority from effecting an arrest by:
   (a) Using or threatening to use physical force against the peace officer or another[.]

*Elliott*, 77 Hawai'i at 310 n. 2, 884 P.2d at 373 n. 2 (emphasis and brackets in original).

7. It would appear beyond purview that the requisite culpable state of mind is an essential element that must be proven beyond a reasonable doubt except in the rare case where the offense is a strict liability one.

would be insufficient to establish penal liability and, thus, the jurisdiction of the court.[8]

### B.

HRPP Rule 7(d) confirms that the sufficiency of a charge is not measured solely by whether it contains the elements as defined by HRS § 702–205. As set forth, HRPP Rule 7(d) provides that "[*t* ]*he charge* shall be a plain, concise and definite statement of the *essential facts constituting the offense charged*." (Emphases added.) "Facts" denote matters that are broader than elements, as defined in HRS § 702–205, and a culpable state of mind is an "essential fact constituting the offense charged[,]" HRPP Rule 7(d), inasmuch as "no person may be convicted of an offense unless" the prosecution proves, *inter alia,* "[t]he state of mind required to establish each element of the offense" "beyond a reasonable doubt[,]" HRS § 701–114 (1993).

### C.

Moreover, because HRS § 291E–61(a)(1) and (3) do not expressly set forth a requisite state of mind, to reiterate, HRS § 702–204 mandates that each element (as defined in HRS § 702–205) "is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly." HRS § 702–204 (emphasis added). Thus, by virtue of HRS § 702–204, an intentional, knowing, or reckless state of mind is expressly *incorporated* into statutes like HRS § 291E–61 and, hence, must be included in the charge. The HPC does not draw any distinction for this purpose between an offense that contains the requisite state of mind in the definition of the offense and one that does not. Thus, whether the charge expressly includes the requisite state of mind in the definition of the offense or not, the state of mind must be alleged in the charge for purposes of jurisdiction. But, the requisite states of mind were not alleged in the charges against Petitioners. Consequently, the charges "contain[ed] within [them] a substantive jurisdictional defect, . . . render[ing] Petitioners'] . . . judgment[s] of conviction . . . a nullity" *Cummings,* 101 Hawai'i at 142, 63 P.3d at 1112. Petitioners' convictions therefore cannot stand.

### IV.

As discussed *supra,* a charge not only serves the function of establishing the jurisdiction of the court, but also "inform[s the defendant] of the nature and cause of the accusation" against him or her, Haw. Const. Art. I § 14, and provides the defendant with notice for purposes of due process, Haw. Const. Art. I § 5 ("No person shall be deprived of life, liberty or property without due process of law[.]").

### A.

Haw. Const. Art. I § 14 mandates that a charge "be worded in a manner such 'that the nature and cause of the accusation could be understood by a person of common understanding.'" *Sprattling,* 99 Hawai'i at 318, 55 P.3d at 282 (quoting *Israel,* 78 Hawai'i at 71, 890 P.2d at 308); *cf. State v. Beltran,* 116 Hawai'i 146, 151, 172 P.3d 458, 463 (2007) (stating that a penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement'"). "'[T]he principle of fundamental fairness, essential to the concept of due process of law, dictates that the defendant in a criminal action should not be relegated to a position from which he or she must speculate as to what crime he or she will have to meet in defense.'" *Id.* at 318, 55 P.3d at 282 (quoting *Israel,* 78 Hawai'i at 71, 890 P.2d at 308) (brackets omitted); *see also* Haw. Const. Art. I § 14; Haw. Const. Art. I § 5.

Based on the charges herein, a person of common understanding would *not* know that he or she was being accused of committing the OVUII offense, whether under HRS § 291E–61(a)(1) or (a)(3), "intentionally, knowingly, or recklessly." Relatedly, a person of common understanding also would not know that negligent conduct is insufficient to establish criminal liability under the statute. Without the allegation of a state of mind, a defendant would be led to believe that criminal liability is automatically imposed without

---

**8.** Although HRS § 291E–61 is not an offense under the HPC, the HPC nevertheless applies

"unless the HPC otherwise provides." HRS § 701–102 (1993).

respect to proof of that essential element. The charges, therefore, were neither "unmistakable" nor "readily comprehensible," *State v. Wheeler,* 121 Hawai'i 383, 393, 219 P.3d 1170, 1180 (2009), and thus failed to "inform [Petitioners] of the nature and cause of the accusation" against them, Haw. Const. Art. I § 14.

## B.

Along these lines, this court has further declared that "[t]he onus is on the prosecution to inform the accused *fully* of the accusations presented against him or her[.]" *Sprattling,* 99 Hawai'i at 318, 55 P.3d at 282 (emphasis added). It is plain that informing the accused "fully" of the nature and cause of the accusation against him or her, and sufficiently apprising the defendant of what he or she must be prepared to meet to defend against the charges, requires notifying the defendant of *all* essential elements of the offense, as defined in HRS § 702–205, as well as the state of mind that applies to each of those elements, *Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244; HRS § 702–204.

Furthermore, although a culpable state of mind is not referred to as an "element" in HRS § 702–205, it would be legally incomprehensible to hold that a state of mind need be alleged only for offenses specifically designating a state of mind in the description of the offense. At oral argument in this case, it was noted that "in practically every indictment we look at, the indictment sets out the elements of the crime, that is, the elements as defined in the penal code," *and* alleges "the state of mind, even though the penal code says 'state of mind is not an element.'" [9] Hence, there is no rational or constitutionally defensible basis for excluding a state of mind allegation for defendants charged under HRS § 291E–61 and thus denying them notification of the requisite state of mind that defendants charged with other offenses must be afforded. Haw. Const. Art. I § 5.

## V.

### A.

The majority concludes, that a state of mind is a "fact[ ]" that must be included in an HRS § 291E–61(a)(1) charge for due process purposes only, but not an element of HRS § 291E–61(a)(1) that must be included in a charge for purposes of jurisdiction. *Id.* at 9, 15, 18. According to the majority, a state of mind is not listed as an element under HRS § 702–205, and *State v. Klinge,* 92 Hawai'i 577, 584 n. 3, 994 P.2d 509, 516 n. 3 (2000), stated that "*under HRS § 702–205,* state of mind is not an 'element' of a criminal offense." *Id.* at 16 (emphasis added). While acknowledging that *Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244, *Faulkner,* 61 Haw. at 178, 599 P.2d at 286, and *Yonaha,* 68 Haw. at 587, 723 P.2d at 186, characterized a state of mind as an essential element of an offense, the majority concludes those cases "are in tension with the statutory definition of 'essential elements' in HRS § 702–205,[10] which does not include mens rea[,]" and merely "complicat[e] the issue" with respect to what must be included in a charge. *Id.* at 15–16.

Plainly, a state of mind is not an element as defined by HRS § 702–205, and *Klinge* merely pointed this out. *Klinge*'s reference to HRS § 702–205 *only* is accurate enough. However, nothing in HRS § 702–205 limits essential elements of an offense that must be included in a charge to the elements expressly delineated thereunder. HRS § 702–205 says nothing of, and does not govern, charging instruments or jurisdiction. *Jendrusch, Faulkner,* and *Yonaha,* decided *after* the adoption of the HPC, including HRS § 702–205, hold that a state of mind is an "essential element" or "necessary element" of an offense *for jurisdictional purposes,* and the failure to include the requisite state of mind in the charge renders a charge fatally defective.

### B.

Respectfully, contrary to the majority's assertion, statutes, rules, and case law govern-

---

9. The oral argument in this case may be found at http://www.courts.state.hi.us/courts/oral_arguments/archive/oasc10_0000072.html   at 15:10–16:29.

10. It should be noted that the term "essential elements" is from our case law, e.g., *Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244, and *not* used in HRS § 702–205.

ing what must be alleged in a charge are not "complicated" or "in tension." Majority opinion at 623. Except for the limited circumstances provided for in HRS § 702–212, no person may be convicted "of an offense unless the person acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense." As stated, although HRS § 291E–61 does not specify the requisite state of mind, HRS § 702–204 does. In that respect, a charge " 'must sufficiently allege all of the essential elements of the offense charged[.]' " *Cummings,* 101 Hawai'i at 142, 63 P.3d at 1112 (quoting *Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244); *accord Israel,* 78 Hawai'i at 69–70, 890 P.2d at 306–07; *Elliott,* 77 Hawai'i at 311, 884 P.2d at 374.

Our case law could not be clearer that the essential elements of an offense include the requisite state of mind, *Jendrusch,* 58 Haw. at 282, 567 P.2d at 1245; *Yonaha,* 68 Haw. at 587, 723 P.2d at 186; *Faulkner,* 61 Haw. at 178, 599 P.2d at 286, as well as "conduct," "attendant circumstances," and "results of conduct," as defined in HRS § 702–205. Thus, our case law is not "complicated," but in fact clarifies what must be included in a charging document for purposes of jurisdiction, for purposes of fully informing the defendant as to the nature and cause of the accusation, and for purposes of guaranteeing due process.

Nor does our case law create "tension" with respect to the elements that must be included in a charge to confer jurisdiction on the court. The aforementioned cases plainly set forth the requisite state of mind as an essential element *in addition* to those elements set forth in HRS § 702–205 that must be alleged in order to confer jurisdiction. The case law on "essential elements" embodies the long-standing common law of this jurisdiction and complements HRS § 702–205, which as noted before, does not govern charging instruments or jurisdiction.

### C.

Respectfully, the majority's position that the HRS § 291E–61(a)(1) charge in this case was deficient for failing to provide "fair notice" to Petitioners, but nevertheless jurisdictionally sound, cannot be reconciled. Under the majority's holding today, a charge under

HRS § 291E–61 is defective and thus deprives the trial court of jurisdiction only if it omitted the requisite state of mind *and* one of the elements set forth under HRS § 702–205. But, this court has said, "the sufficiency of the charging instrument is measured, *inter alia,* by 'whether it contains the elements of the offense intended to be charged, *and* sufficiently apprises the defendant of what he or she must be prepared to meet.' " *Cummings,* 101 Hawai'i at 142, 63 P.3d at 1112 (quoting *Wells,* 78 Hawai'i at 379–80, 894 P.2d at 76–77) (emphasis added). Thus, a charge defective for purposes of due process, necessarily, fails to allege an essential element of the offense and, consequently, must be defective for purposes of jurisdiction also.

### VI.

Although the majority agrees that a state of mind must be included in an HRS § 291E–61(a)(1) charge, it concludes that HRS § 291E–61(a)(3) is a strict liability offense, for which a state of mind need not be alleged or proven. Majority opinion at 626. In this regard, the commentary to HRS § 702–204 states that a "state of mind [ ] will, in most instances, be required for the imposition of penal liability[,]" and, consequently, HRS § 702–212 "provides for *those relatively few instances* when absolute or strict liability will be recognized." (Emphasis added.) Thus, HRS § 702–212 states that, for "crime[s] defined by statute other than [the HPC]," the states of mind specified by the HPC "do not apply ... insofar as a legislative purpose to impose absolute liability for such offense or with respect to any element thereof plainly appears."

The reason for this is plain. The central premise of the HPC is that conviction and punishment should be based on moral culpability. *See* commentary to HRS § 702–204 ("The distinct punitive nature of penal law dictates its sanction be reserved for those individuals who can be morally condemned.") Hence, under the HPC, "[t]he penal law does not, in most instances, condemn a person's conduct alone" but, rather, "condemns the individual whose state of mind with regard to the individual's conduct, attendant circumstances, and the result of the individu-

al's conduct, exhibits an intent to harm, an indifference to harming, or a gross deviation from reasonable care for protected societal values." *Id.* Thus, "within the immediate context of the [HPC] criminal liability must be based on culpability[,]" and for "crimes defined by statutes other than the [HPC]—when and *only when*—'a legislative purpose to impose absolute liability for such offense or with respect to any element thereof plainly appears.'" Commentary to HRS § 702–212(2) (emphasis added). The HPC is "applicable to offenses defined by other statutes, unless the Code otherwise provides." HRS § 701–102(2). The HPC, then, "takes the general position that absolute or strict liability in the penal law is *indefensible* in principle if conviction results in the possibility of imprisonment and condemnation[,]" whether or not the offense is defined by the HPC or other statute. *Id.* (emphasis added). In this case, conviction may result in "imprisonment and condemnation." [11] *Id.* Accordingly, to treat HRS § 291E–61(a)(3) as a strict liability offense under the circumstances is indefensible under the code. There is no "statutory language [in HRS § 291E–61(a)(3)] expressly imposing absolute liability[,]" and therefore a legislative purpose to impose absolute liability should not be "lightly discerned." *Eastman,* 81 Hawai'i at 140, 913 P.2d at 66. This "seems very clear." Commentary to HRS § 702–212. Thus, the states of mind denominated under HRS § 702–204 ... apply." *Id.*

### A.

In support of its assertion that it is "well established that the legislature plainly intended to make [HRS § 291E–61] a 'per se' or 'absolute liability' offense, for which no mens rea element need be proven or even alleged," the majority relies primarily on *State v. Mezurashi,* 77 Hawai'i 94, 881 P.2d

1240 (1994), *State v. Christie,* 7 Haw.App. 368, 764 P.2d 1245 (App.1998), *State v. Young,* 8 Haw.App. 145, 795 P.2d 285 (App. 1990), and *State v. Wetzel,* 7 Haw.App. 532, 539, 782 P.2d 891, 895 (App.1989). Majority opinion at 626.

In *Christie,* 7 Haw.App. at 370, 764 P.2d at 1246, the ICA stated that "[s]ince 1983, DUI [12] has been a *per se* offense under [HRS] § 291–4(a)(2) (1985)[, the blood alcohol content (BAC) [13] section at the time,] requiring the mere proof of 0.10 percent or more by weight of alcohol in the driver's blood." *Christie* did not involve any issue regarding whether HRS § 291–4(a)(2) was a strict liability offense but involved a challenge to the method by which the intoxilyzer machine was calibrated. *Id.* at 370–71, 764 P.2d at 1247. *Christie* did not discuss HRS § 702–212, the commentary thereto, whether a legislative purpose to impose absolute liability under the BAC section plainly appeared in HRS § 291–4 or in its legislative history, or whether defenses could be raised to that section of the statute. Rather, in concluding that the BAC section was an absolute liability offense, *Christie* only reproduced the BAC section of the DUI statute. *Id.*

*Wetzel* relied on *Christie* when noting in a footnote, that the ICA had previously stated that DUI, HRS § 291–4, is a per se offense. *See Wetzel,* 7 Haw.App. at 539 n. 8, 782 P.2d at 895 n. 8. *Wetzel,* like *Christie,* did not involve the issue of whether the BAC section of the DUI statute was an "absolute liability" offense, but concerned a challenge to the foundation for the admission of BAC evidence. *Id.* at 535, 782 P.2d at 893. As in *Christie,* there was no discussion of HRS § 702–212, the commentary thereto, whether a legislative purpose to impose absolute lia-

---

11. A person committed of OVUII for the first time may receive "[n]ot less than forty-eight hours and not more than five days of imprisonment[.] HRS § 291E–61(b)(1).

12. The statute in effect at the time, HRS § 291–4 (1985) (hereinafter, "DUI" statute) provided:
   Driving under the influence of intoxicating liquor. (a) A person commits the offense of driving under influence of intoxicating liquor if: (1) The person operates or assumes actual physical control of the operation of any vehicle

while under the influence of intoxicating liquor; or
(2) The person operates or assumes actual physical control of the operation of any vehicle with 0.10 per cent or more, by weight of alcohol in the person's blood.

13. As indicated the breath alcohol content (also, hereinafter, referred to as "BAC") under HRS § 291E–61(a)(3) is at issue in this case, not the blood alcohol content under HRS § 291E–61(a)(4).

bility under the BAC section plainly appeared in HRS § 291–4 or its legislative history, or whether defenses could be raised to HRS § 291–4.

*Young*, 8 Haw.App. at 153, 795 P.2d at 291, an ICA case relied upon heavily by the majority, only quoted HRS § 702–212 in holding that the legislative purpose of the BAC section of HRS § 291–4 " 'was to impose absolute liability for such offense or with respect to any element thereof,' as provided in HRS § 702–212(2). (Quoting HRS § 702–212(2).) *Young* did not point to *any* language in HRS § 291–4 or its legislative history, nor did *Young* consider whether defenses could be raised to HRS § 291–4. Rather, *Young* merely relied on *Wetzel*, noting that *Wetzel* determined that "[b]y enacting [the BAC section], 'the legislature permitted proof of DUI by merely showing that a defendant drove a vehicle with a BAC of 0.10 percent or more." *Id.* (quoting *Wetzel*, 7 Haw.App. at 539, 782 P.2d at 895). But, as stated, *Wetzel*, merely relied on *Christie*, which did not engage in the required HRS § 702–212(2) analysis, and *Wetzel* itself failed to engage in any independent analysis under HRS § 702–212(2). In this regard, *Young*, notwithstanding it recitation of the language of HRS § 702–212(2), lightly discerned a legislative intent to impose absolute liability under the BAC section. Notably, *Christie*, *Wetzel*, and *Young* are all ICA cases and are not binding on this court. I respectfully disagree with the majority's reliance on cases that have failed to identify any express language in the DUI statute or its legislative history indicating the BAC section was intended to be a strict liability offense.

*Mezurashi*, the only supreme court case relied upon by the majority did not involve whether the BAC section of HRS § 291–4 was an absolute liability offense.[14] *Mezura-*

*shi* relied on *Christie* for the proposition that the BAC section of the DUI statute was a per se offense. *See Mezurashi*, 77 Hawai'i at 96, 881 P.2d at 1242.

It is apparent that the classification of the BAC section of the DUI statute, the predecessor of the BAC section of the OVUII statute, as a per se offenses originated in *Christie*, without any HRS § 702–212(2) analysis, and *Christie* was merely followed in subsequent cases. In *Young*, the ICA did conclude that there is no mens rea requirement for the BAC section of DUI, but again, without any analysis of HRS § 702–212, its requirements, or its commentary or the legislative history of the DUI statute. *see* 8 Haw. App. at 153, 795 P.2d at 291. Accordingly, it would appear that a legislative intent to impose absolute liability was "discerned lightly," *Eastman*, 81 Hawai'i at 140, 913 P.2d at 66, by the foregoing cases, an approach that the commentary to HRS § 702–212 cautions against "clearly" and which *Eastman* disavowed.

### B.

In contrast to the foregoing cases, in *Eastman*, 81 Hawai'i at 140, 913 P.2d at 66, this court held that although the abuse of a family or household member statute did not refer to a requisite state of mind, the offense is not an absolute liability offense.[15] *Eastman* noted that HRS § 702–212(2) permits a penal statute to dispense with the state of mind requirement "only 'insofar as a legislative purpose to impose absolute liability ... *plainly appears.*' " *Id.* (emphasis in original). According to *Eastman*, this means, to reiterate, that "[a]bsent statutory language expressly imposing absolute liability, the states of mind denominated in HRS § 702–

---

14. The issue was "whether the Prosecution may rely on an intoxilyzer test result to prosecute a violation of [HRS] § 291–4(a)(1) [ (driving under the influence of intoxicating liquor) ] ... when the HRS § 291–4(a)(2) [ (BAC section) ] charge has been dismissed." *Mezurashi*, 77 Hawai'i at 95, 881 P.2d at 1241.

15. The statute at issue in *Eastman*, HRS § 709–906(5) (Supp.1994), provides in pertinent part as follows:

Abuse of a family or household member, and refusal to comply with the lawful order of a

police officer under subsection (4) are misdemeanors and the person shall be sentenced as follows:
(a) For the first offense the person shall serve a minimum jail sentence of forty-eight hours; and
(b) For a second offense and any other subsequent offense which occurs within one year of the previous offense the person shall be termed a "repeat offender" and serve a minimum jail sentence of thirty days.

204 will generally apply because [this court] will not lightly discern a legislative purpose to impose absolute liability." *Id.* (quoting *Rushing,* 62 Haw. at 105, 612 P.2d at 106).

In *Rushing,* 62 Haw. at 105, 612 P.2d at 106, this court rejected the defendant's argument that HRS § 346–34, which provided at the time that "a recipient who fails to report income from outside sources 'shall be deemed guilty of fraud,'" created a "statutory presumption of intent . . . in violation of the Due Process Clause of the Fourteenth Amendment." This court did "not find the legislative purpose to impose absolute liability plainly to appear from the wording of HRS [§ ] 346–34." *Id.* (citing Commentary to HRS § 702–212). Thus, this court held that under HRS § 346–34, a defendant must act intentionally, knowingly, or recklessly. *Id.*

There is no express language imposing strict liability in HRS § 291E–61(a)(3). It would be inconsistent with the more recent admonitions in *Eastman* and *Rushing* to follow the older line of *Christie* cases referred to earlier. Because they lack any analysis or application of HRS § 702–212(2), those cases violated the admonition that, in the "[a]bsen[ce of] statutory language *expressly* imposing absolute liability," this court "will not lightly discern a legislative purpose to impose absolute liability." *Eastman,* 81 Hawaiʻi at 140, 913 P.2d at 66 (emphasis added). Construing HRS § 291E–61(a)(3) to dispense with a state of mind requirement in such circumstances would violate HRS § 702–212. To the extent *Young,* an ICA case, failed to adhere to HRS § 702–212(2) and, instead, appears to have "lightly discern[ed]" that the BAC provision creates an "absolute liability" offense under HRS § 702–212, it should not control.[16]

### C.

### 1.

Next, in the absence of any express language in HRS § 291E–61(a)(3) and the lack of any cogent analysis in the cases declaring the BAC section of the prior DUI statute a

"per se offense," the majority asserts that in 1983, the legislature indicated its intent to qualify for "federal grants," majority opinion at 627 (citing S. Conf. Comm. Rep. No. 999, in 1983 Senate Journal, at 1478), and tracked one of the federal goals that a "'defendant *shall be deemed* under the influence of intoxicating liquor if he has ten-hundredths per cent or more by weight of alcohol in his blood[,]" *id.* (quoting H. Stand. Comm. Rep. No. 591, in 1983 House Journal, at 1105) (emphasis in original). Also, the majority states that one of the requirements for such grants was that a person "'shall be deemed to be *driving while intoxicated*" if that person has "a blood alcohol concentration of 0.10 percent or greater.'" Majority opinion at 627 (quoting Alcohol Traffic Safety–National Driver Register Act of 1982, Pub. L. No. 97–364, § 101, 96 Stat. 1738, 1738 (1982)). According to the majority, the legislature then amended the statute to provide that a "person commits the offense of driving under the influence of intoxicating liquor if: . . . (2) The person operates or assume actual physical control of the operation of any vehicle with 0.10 per cent or more by weight of alcohol in the person's blood." Majority opinion at 628 (quoting 1983 Sess. Laws Act 117, § 1 at 208).

In 1995, the legislature amended HRS § 291–4 to change the specified BAC from .10 to .08. *See* 1995 Sess. Laws Act 226, § 9 at 587. In amending the statute, the legislature intended "to toughen the laws regarding driving under the influence of intoxicating liquor or drugs" by, *inter alia,* "lower[ing] the blood alcohol concentration *threshold* from .10 to .08." H. Conf. Comm. Rep. No. 715, in 1995 House Journal, at 962 (emphasis added). The legislature determined that "lowering the BAC to .08 would *set the threshold for driving under the influence of intoxicating liquors* at a level at which driving skills are proven to be compromised for the vast majority of drivers." H. Conf. Comm. Rep. No. 716, in 1995 House Journal,

---

**16.** The majority contends that "from Territorial days to the present, [DUI/OVUII law] has not changed much" and thus, "the line of cases holding the [BAC section under the DUI statute] to an absolute offense continues to apply with the same force to the instant appeals." Majority

opinion at 629–30. However, because those cases failed to engage in any sort of analysis with respect to a legislative intent to impose strict liability under the BAC section of the DUI statute, as was done in *Eastman* and *Rushing,* those cases should not "continue[ ] to apply."

at 1346 (emphasis added). According to the legislature, ".08 BAC *is a limit* which is reasonable and necessary for the safety of all[.]" *Id.* (emphasis added).

The term "deem" is ordinarily defined as "[t]o treat (something) as if (1) it were really something else, or (2) it had qualities that it does not have[.]" *Black's Law Dictionary* 446 (8th ed. 2004). The definition notes that the term "deem" "has been traditionally considered to be a useful word when it is necessary to establish a legal fiction either positively by deeming something to be what it is not or negatively by deeming something not be what it is." *Id.* (internal quotation marks and citation omitted). Thus, in amending the DUI statute to include the BAC provision, the legislature established two alternative methods of proving the element of "influence of intoxicating liquor." The prosecution could seek to submit evidence tending to establish that the defendant was "under the influence of intoxicating liquor[,]" which might include evidence that the defendant had blood-shot eyes or the odor of an alcoholic beverage on his or her breath, or to submit evidence that there was ".10 per cent or more, by weight of alcohol in the [defendant]'s blood[,]" at the time the defendant was in control of a vehicle, thus equating being under the influence with a .10 BAC.

The prescribed BAC level thus sets forth the "threshold," H. Conf. Comm. Rep. No. 716, in 1995 House Journal, at 1346, or "limit" for intoxication, H. Conf. Comm. Rep. No. 716, in 1995 House Journal, at 1346. But the fact that one is "deemed" intoxicated at a certain BAC percentage merely equated that level with being under the influence. That amendment did not indicate that a culpable state of mind did not attach to intoxication. Nothing in the legislative history suggests that the federal government or the legislature intended to dispense with any culpable state of mind for the offense. Given its ordinary meaning, the words "shall be deemed ... intoxicated" did not eliminate a culpable state of mind with respect to the BAC element, or as to any of the other elements of the DUI offense, such as exercising control of a vehicle.

Further, although in amending HRS § 291-4 in 1995, the legislature sought to "toughen the laws regarding driving under the influence of intoxicating liquor or drugs," H. Conf. Comm. Rep. No. 715, in 1995 House Journal, at 962, the legislature never made any reference to omitting a state of mind requirement or to precluding any defenses to the BAC section of the statute. Accordingly, the legislative history pertaining to the BAC amendments do not support the conclusion that the legislature intended that a defendant should be strictly liable for all elements under the BAC section of the DUI/OVUII statute. With all due respect, in the absence of language in the DUI/OVUII statutes, or legislative history expressly evincing a clear intent to make the BAC section a strict liability offense, the majority violates the admonition that this court "not lightly discern a legislative intent" to impose absolute liability with respect to HRS § 291E–61(a)(3). *Eastman,* 81 Hawai'i at 140, 913 P.2d at 66 (quoting *Rushing,* 62 Haw. at 105, 612 P.2d at 106).

*State v. Buch,* 83 Hawai'i 308, 926 P.2d 599 (1996), is instructive with respect to the kind of legislative history that might evince an intent to make an offense one of strict liability. In *Buch,* the defendant was convicted of sexual assault in the third degree, HRS § 707–732(1)(b), which provided in relevant part that "a person commits the offense of sexual assault in the third degree if the person *knowingly* subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person.'" *Id.* at 309 n. 1, 926 P.2d at 600 n. 1 (brackets and ellipsis omitted) (emphasis added). The defendant requested an instruction on sexual assault in the fourth degree, which provided that a person commits the fourth degree offense if the person "knowingly" subjects another person to sexual contact. *Id.* at 312, 926 P.2d at 603 (brackets and ellipsis omitted). The trial court refused to give the instruction. *Id.*

At the close of the prosecution's case, the defendant moved for a judgment of acquittal, asserting that the prosecution had not proven beyond a reasonable doubt that the defendant knew the complaining witness was less than fourteen years old. *Id.* at 311, 926 P.2d at 602. The trial court denied the defendant's motion. *Id.* On appeal, the defendant

contended, pursuant to HRS § 702–207, that "[w]hen the definition of an offense specifies the state of mind, ... the specified state of mind shall apply to all elements of the offense, unless a contrary purpose plainly appears." *Id.*

*Buch* noted that under 1970 proposed draft of the HPC, sexual assault offenses required knowledge of the attendant circumstance of the minor's age. *Id.* at 314, 926 P.2d at 605. The legislative history pertinent to the sexual assault offense stated that various sections had been amended by the legislature "'to increase the age of consent from 12 to 14" and " '*to eliminate the requirement of actual knowledge* [.]' " *Id.* at 315–16, 926 P.2d at 606–07 (quoting Conf. Comm. Rep. No. 1, in 1972 House Journal, at 1038) (emphasis added). According to *Buch,* "[t]he legislative history unequivocally indicates that, where the age of the victim is an element of a sexual offense, the specified state of mind is not intended to apply to that element." *Id.* at 316, 926 P.2d at 607. This court thus held that "a defendant is strictly liable with respect to the attendant circumstance of the victim's age in a sexual assault[.]" *Id.*

The majority does not point to any legislative history remotely similar to the legislative history in *Buch.* The legislative history does not state that it sought " 'to eliminate the [state of mind] requirement[.]' " *Id.* at 315–16, 926 P.2d at 606–07 (quoting Conf. Comm. Rep. No. 1, in 1972 House Journal, at 1038). Nor does the majority cite to any legislative history that "unequivocally indicates[,]" *id.* at 316, 926 P.2d at 607, that the legislature intended that no state of mind requirement apply to HRS § 291E–61(a)(3). Thus, no legislative purpose to impose absolute liability for HRS § 291E–61(a)(3) is reflected in the statute or its legislative history.

### 2.

The majority attempts to draw a distinction between crimes that fall within the HPC and those that do not, suggesting that the imposition of strict liability as "indefensible" does not apply to those offenses not defined in the HPC. *See* majority opinion at 629 n. 8. Respectfully, the majority's suggestion that the requirement of moral culpability is any less applicable because a penal offense is found outside the HPC is not supported by

the HPC or its commentary. HRS § 702–212(2) does not suggest that offenses defined outside the code do not require moral culpability. HRS § 702–212(2) merely "recognize[s] that the scope of the Penal Code is finite," and penal offenses may be defined outside the HPC. Commentary to HRS § 702–212(2). Indeed, the HPC is "applicable to offenses defined by other statutes, unless the Code otherwise provides." HRS § 701–102(2). Thus, the HPC presumes states of mind apply to offenses defined by the HPC *and* offenses defined outside the HPC. *See* Commentary to HRS § 702–212(2) (explaining that the exception in HRS § 702–212(2), which allows an offense to dispense with a state of mind "provides for an extremely limited situation").

Accordingly, the fact that HRS § 291E–61(a)(3) is outside the HPC does not diminish the requirements that strict liability should only be imposed if there is express language to that effect or, second, if the legislature clearly said so. We have already confirmed this standard in a case like this one, involving a statute outside the HPC that did not contain a state of mind designation, *see Rushing,* 62 Haw. at 105, 612 P.2d at 106. Contrary to the majority's view, for the reasons stated *supra,* it does not "plainly appear[,]" HRS § 702–212(2), that merely equating a BAC level with driving under the influence, demonstrates that the legislature intended to impose strict liability. When the legislature intended to do so, it "unequivocally" expressed its intent. *Buch,* 83 Hawai'i at 316, 926 P.2d at 607.

### 3.

The majority also asserts that "[t]he legislature is presumed to be aware of judicial constructions ... and it has had abundant opportunities to amend the statute if it intended for [the former DUI statute] and its successor HRS § 291E–61(a)(3) not to constitute absolute liability offenses." Majority opinion at 629. Although this court has suggested that the legislature's failure to respond to judicial construction of statute may be deemed tacit approval of such construction, *see Hussein,* 122 Hawai'i at 529, 229 P.3d at 347; *Gray v. Admin. Dir.,* 84 Hawai'i at 143 n. 9, 931 P.2d at 585; *State v. Dannenberg,* 74 Haw. 75, 83, 837 P.2d 776, 780

(1992), the validity of this proposition has been questioned by the United States Supreme Court and other federal courts.

In *United States v. Wells*, 519 U.S. 482, 495–96, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997), for example, the Supreme Court suggested that congressional inaction or silence is not a realistic indicator of legislative intent:

> [Respondents] contend that *Congress has ratified holdings of some of the Courts of Appeals* that materiality is an element of § 1014 *by repeatedly amending the statute without rejecting those decisions. But the significance of subsequent congressional action or inaction necessarily varies with the circumstances, and finding any interpretive help in congressional behavior here is impossible.* Since 1948, Congress has amended § 1014 to modify the list of covered institutions and to increase the maximum penalty, but without ever touching the original phraseology criminalizing "false statement[s]" made "for the purpose of influencing" the actions of the enumerated institutions. *We thus have at most legislative silence on the crucial statutory language, and we have "frequently cautioned that '[i]t is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law* [.]' "

(Emphases added.)[17] Moreover, a court should view legislative inaction or silence as evidence of the legislature's tacit approval only with extreme care, *Agency of Northern Cook County v. United States Army Corps of Eng'rs*, 531 U.S. 159, 169, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001) (stating that, "[a]lthough we have recognized congressional acquiescence to administrative interpretations of a statute in some situations, we have done so with extreme care"), and should be deemed evidence of such approval only where it is apparent the legislature was indeed aware of the particular statutory construction.[18]

There is nothing in the legislative history to indicate that the legislature was fully aware of this court's construction of HRS § 291E–61(a)(3) as a per se offense, or that such construction was brought to the legislature's attention for the purpose of enacting HRS § 291E–61(a)(3). *See Rutherford*, 442 U.S. at 554, 99 S.Ct. 2470. By relying, at least in part on the legislature's purported tacit approval, respectfully, the majority "lightly discern[s]" a legislative intent in order to impose absolute liability. *Eastman*, 81 Hawai'i at 140, 913 P.2d at 66 (1996) (quoting *Rushing*, 62 Haw. at 105, 612 P.2d at 106).

### D.

### 1.

The majority's construction of HRS § 291E–61(a)(3) is further undercut by the

---

17. *See also Bob Jones Univ. v. U.S.*, 461 U.S. 574, 600, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983) ("Non-action by Congress is not often a useful guide...."); *United States v. Rutherford*, 442 U.S. 544, 554 n. 10, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979) ("To be sure, it may not always be realistic to infer approval of a judicial or administrative interpretation from congressional silence alone.") *First Nat'l City Bank v. United States*, 214 Ct.Cl. 585, 557 F.2d 1379, 1384 (1977) (acknowledging "that the doctrine of legislative acquiescence is at best only an auxiliary tool for use in interpreting ambiguous statutory provisions").

18. *See also U.S. v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 137, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985) (Although we are chary of attributing significance to Congress' failure to act, a refusal by Congress to overrule an agency's construction of legislation is at least some evidence of the reasonableness of that construction, particularly where the administrative construction has been brought to Congress' attention through legislation specifically designed to supplant it."); *See* *also Rutherford*, 442 U.S. at 554, 99 S.Ct. 2470 (explaining that deference to an agency's interpretation of a statute is particularly appropriate when "an agency's statutory construction has been 'fully brought to the attention of the public and the Congress,' and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned"); *FDA v. Brown & Williamson*, 529 U.S. 120, 155–56, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) ("Indeed, this is not a case of simple inaction by Congress that purportedly represents its acquiescence in an agency's position [;]" rather "Congress has enacted several statutes addressing the particular subject of tobacco and health, creating a distinct regulatory scheme for cigarettes and smokeless tobacco" such that "it is clear that Congress' tobacco-specific legislation has effectively ratified the FDA's previous position that it lacks jurisdiction to regulate tobacco).

defenses of nonself-induced intoxication and pathological intoxication, HRS § 702–230(2). Nothing in HRS § 291E–61(a)(3) or its legislative history suggests that the BAC section of the DUI statute, now OVUII statute, is absolved from these defenses.

HRS § 702–230 provides that "[e]vidence of the nonself-induced or pathological intoxication of the defendant *shall be admissible* to prove or *negative* the *conduct* alleged *or the state of mind* sufficient to establish an element of the offense." (Emphases added.) "Self-induced intoxication" is defined as "intoxication caused by substances which the defendant knowingly introduces into the defendant's body, the tendency of which [is] to cause intoxication the defendant knows or ought to know[.]" HRS § 702–230(5)(a). Conversely, then, nonself-induced intoxication would be intoxication caused by substances which the defendant knowingly introduces into the defendant's body, the tendency of which is to cause intoxication the defendant *does not know or ought to know about.* Self-induced intoxication would clearly encompass instances in which a person drinks something without knowing that it will cause intoxication, for example, "spiked punch."

"Pathological intoxication" is defined as "intoxication grossly excessive in degree, given the amount of the intoxicant, to which the defendant *does not know* the defendant is susceptible and which results from a physical abnormality of the defendant." HRS § 702–230(5)(c) (emphasis added). The commentary to HRS § 702–230 explains that "'pathological intoxication' is defined and employed 'to provide a defense in a few, extremely rare, cases in which an intoxicating substance is knowingly taken into the body and, because of a bodily abnormality, intoxication of an extreme and unusual and unforeseen degree results.'" (Brackets omitted.)

Nothing in HRS § 702–230 indicates that nonself-induced intoxication or pathological intoxication are not available as defenses to an HRS § 291E–61(a)(3) charge. Indeed, the opposite is true inasmuch as the defenses refer to intoxication, and OVUII is an offense based upon act(s) committed while one is intoxicated. The majority states that it does not decide whether its holding that HRS § 291E–61(a)(3) is a strict liability offense would be inconsistent with the defenses under HRS § 702–230. Majority opinion at 629 n. 8. However, in light of the formulation of the defenses, it would appear inconsistent to treat HRS § 291E–61(a)(3) as a strict liability offense. The majority's reserves the question as one that "splits" the jurisdictions. However, *State v. Teschner,* 76 Ill.App.3d 124, 31 Ill.Dec. 691, 394 N.E.2d 893, 895 (1979) *State v. West,* 416 A.2d 5, 7, 9 (Me. 1980), *State v. Gurule,* 149 N.M. 599, 252 P.3d 823, 825, 828 (2011), *State v. Hammond,* 118 N.J. 306, 571 A.2d 942, 943 (1990), cited by the majority, all hold that an involuntary intoxication defense would be inconsistent with a strict liability statute. The one case cited by the majority as holding that the defense can be asserted in a strict liability charge, rested not on a statutory analysis but on overriding constitutional due process grounds. As *Carter v. State,* 710 So.2d 110, 113 (Fla.App.1998) stated, "We have considered the state's argument that the failure to give the instruction [on involuntary intoxication] was harmless[.] ..." "[H]owever, this error has constitutional due process implications[,]" *id.* and "at least three other states agree with our conclusion that due process requires that involuntary intoxication is available as a defense in DUI cases." *Id.* n. 2. *Carter* does not imply that the majority's position is correct, but that it would be subject to due process challenge.

### VII.

Conceivably, the majority's holding creates two classes of OVUII offenders, although all would have essentially engaged in the same conduct. There may be instances where two individuals in virtually the same factual circumstances are equally intoxicated. However, one will be able to raise defenses and the other will be held strictly liable. For example, a defendant charged with OVUII under HRS § 291E–61(a)(1) ("the first driver") will have the benefit of the requirement that the State prove beyond a reasonable doubt each element of HRS § 291E–61 (as defined in HRS § 702–205) intentionally, knowingly, or recklessly. This would include, for example, proof that the defendant intentionally, knowingly, or recklessly drove or operated his or

her vehicle "on a public way, street, road, or highway[.]" *Wheeler*, 121 Hawai'i at 386, 219 P.3d at 1173. Thus, the first driver will be able to assert as a defense, that he or she had no knowledge whatsoever that he or she was on a public way, street, road, or highway, or was only negligent in that belief. That defendant may also avail himself or herself of the defenses set forth HRS § 702–230, if applicable.

On the other hand, under the majority's holding, if an equally intoxicated defendant is charged under HRS § 291E–61 (a)(3) ("the second driver"), that defendant will be strictly liable and convicted of the offense, irrespective of whether he or she did not intentionally, knowingly, or recklessly drive or operate a vehicle on a public way, street, road, or highway, or did so with a negligent state of mind. The State will not be required to prove that the second driver committed the offense with any culpable state of mind. For example, even if there was indisputable proof that the second driver could not have known that he or she was on a public way, street, road, or highway, the second driver would nevertheless be held strictly liable. If the second driver had proof that he or she did not know there was alcohol in his or her beverage; for instance, if a restaurant had mistakenly given him or her an alcoholic beverage instead of punch, the second driver nevertheless would be strictly liable. Presumably, the second driver would not be able to avail himself or herself of the defenses in HRS § 702–230. Respectfully, the majority's construction of the statute invites unfair and unjust results because persons who are in the same or similar circumstances will be subject to materially different consequences under the law.

In any event, the majority raises serious consequences for any driver charged under HRS § 291E–61(a)(3). To reiterate, the central premise of the HPC is that conviction and punishment should be based on moral culpability and, generally, mere conduct is not punishable. *See* commentary to HRS

§ 702–204. However, where, for example, there is indisputable proof that a driver could not have known he or she was on a public way, street, road, or highway, or indisputable proof that a driver was unaware he or she had consumed an alcoholic beverage (e.g., "spiked punch"), conviction under such circumstances contravenes any justification for punishment. The majority's holding, which eliminates the prosecution's burden of proving any state of mind as to operating or assuming actual physical control of a vehicle or as to having a BAC level of .08 or more grams or as to driving upon a public way, street, road, or highway, significantly departs from the principle of moral culpability underlying all criminal law. Respectfully, because HRS § 291E–61(a)(3) is not merely a regulatory statute and conviction thereunder can result "in the possibility of imprisonment and condemnation[,]" to reiterate, construing it as a strict liability offense under these circumstances is "indefensible." Commentary to HRS § 702–212(2).

### VIII.

As observed, the legislative history does not indicate that because one is "deemed" intoxicated at a certain BAC level, he or she should not be charged with a culpable state of mind in becoming "intoxicated," or a culpable state of mind with respect to the other elements of HRS § 291E–61(a)(3). Although it may be impractical to establish that a defendant intentionally or knowingly attained the statutory BAC level, it would not be difficult to establish that the person acted recklessly in attaining that level.[19] *Eastman*, 81 Hawai'i at 140–41, 913 P.2d at 66–67 ("[T]he prosecution did not introduce direct evidence showing [the defendant's] state of mind at the time when he physically abused [the complainant]"; however, "[g]iven the difficulty of proving the requisite state of mind by direct evidence in criminal cases, proof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the defendant's conduct is sufficient").

---

19. HRS § 702–206(3) provides that a person acts recklessly (1) with respect to his conduct when he consciously disregards a substantial and unjustifiable risk that her or her conduct is of the specified nature; (2) with respect to attendant circumstances when he or she consciously disregards a substantial and unjustifiable risk that such circumstances exist; and (c) with respect to a result of his or her conduct when he or she consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result. HRS § 702–206(3).

## IX.

As stated, I concur in the majority's holding that a culpable state of mind must be alleged in an HRS § 291E–61(a)(1) charge in order to adequately inform the defendant as to the nature and cause of the accusation against him or her.[20] However, I must respectfully disagree with the majority's conclusions that a state of mind need not be alleged in an HRS § 291E–61(a)(1) charge for purposes of jurisdiction and that HRS § 291E–61(a)(3) is a strict liability offense for which no state of mind must be alleged or proven. Because a culpable state of mind was not alleged as an "essential element" of HRS § 291E–61(a)(1) and (a)(3) in this case, the charges against Petitioners should be dismissed without prejudice for want of jurisdiction.

---

[20] I also concur in the majority's conclusion that "[t]he distinction between 'general intent' and 'specific intent' crimes . . . no longer applies." Majority opinion at 625. This jurisdiction has abandoned distinctions between general and specific intent "in favor of four defined culpable states of mind[,]" *State v. Kalama*, 94 Hawai'i 60, 65, 8 P.3d 1224, 1229 (2000), i.e., intentional, knowing, reckless and negligent. As discussed, because HRS § 291E–61 does not specify a state of mind, the requisite state of mind that is required to be charged for jurisdictional purposes and for the purposes of informing the defendant of the nature and cause of the accusation against him or her is an intentional, knowing, or reckless state of mind.

I also agree that HRS § 806–28, which provides that an "indictment need not allege that the offense was committed or the act done 'feloniously', 'unlawfully', 'wilfully', 'knowingly', 'maliciously', 'with force and arms', or otherwise *except where such characterization is used in the statutory definition of the offense* [,]" does not apply to district courts. (Emphasis added.) However, insofar as HRS § 702–204 specifies the states of mind for offenses such as HRS § 291E–61(a)(1) and (3), such states of mind are "used in the statutory definition of the offense." HRS § 806–28.